*883 OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be reversed, with costs, and the judgment of the Supreme Court should be reinstated.
The Appellate Division having reversed on the facts, our task is to determine which findings are supported by the weight of the credible evidence (Electrolux Corp. v Val-Worth, Inc., 6 NY2d 556, 563; Cohen and Karger, Powers of the New York Court of Appeals, § 112; 4 NY Jur 2d, Appellate Review, p 462, § 361; cf. Matter of Mahoney v May, 40 NY2d 906), taking into account in a close case “the fact that the trial judge had the advantage of seeing the witnesses” (York Mtge. Corp. v Clotar Constr. Corp., 254 NY 128, 134).
Whether, as the Appellate Division found, the parties agreed to purchase the Peakes’ 83-acre woodlot as an addition to the Crystal Lake property turns largely on whether defendant ever agreed to act for himself, his brother and his two cousins (the plaintiffs), whether he advised plaintiff John Miller that they all should buy the Peake property because of the Forestry Act, and whether John ever informed defendant that John and his brother wished to purchase the woodlot in their names alone. Defendant testified that he offered John and his brother the opportunity to join in the purchase but never agreed to make the purchase for all because he was incensed by John’s statement that he and his brother wished to purchase for themselves and by John’s interference with and jeopardizing of defendant’s relationship with the Peakes, who were his clients. He also testified that he told John Miller in answer to a question the price the Peakes wanted for the lot but never asked John for a check for one quarter of it, and that he never stated that the Forestry Act was a reason, for joint purchase. John Miller denied saying that he and his brother wished to purchase the property alone but conceded that he had said when first told about the property that he would like to buy the woodlot personally. He testified that he discussed with defendant and defendant’s father the purchase of the property and was told by defendant to send him a check for one *884 quarter of the purchase price, and that defendant told him that the four of them should buy the lot because it would enhance the Crystal Lake property and give them more woodland under the Forestry Act. The situation is, thus, one in which credibility plays a major part and the Trial Judge’s advantage in seeing the witnesses should not be ignored.
A number of factors in addition to the deference due the Trial Judge’s finding put the weight of the evidence on defendant’s side. Though defendant’s brother testified that he told defendant the property could not be taken in defendant’s own name and that he and- his father were surprised by the defendant’s statement that he intended to do so, the Peakes testified that defendant’s father prepared and oversaw the execution of the deed from the Peakes to defendant, and defendant’s brother conceded that the acknowledgement of the deed was taken by his father. Since the Crystal Lake property was held at the time by plaintiffs and defendant’s father, it may be inferred from the father’s drawing of the deed that defendant’s father, who also acted as attorney for plaintiffs in some matters, did not believe defendant was violating any. duty to himself or to plaintiffs in taking title to the 83 acres in his own name. Moreover, plaintiffs made no showing that acquisition of the additional 83 acres made any legal difference under the Forestry Act. The fact that defendant offered plaintiffs the opportunity of joining in the purchase is inconsistent with an intent on defendant’s part to act improperly and does not, without more, spell out a joint purchase agreement. Since defendant never undertook to purchase for plaintiffs and his brother and himself, the agency rule stated in the Restatement of Restitution (§ 194, subd [2]), is inapplicable (see § 194, Comment f, at p 799: cf. Restatement, Agency 2d, § 393).
Absent the “apparent and implied agreement” upon which the Appellate Division relied, defendant can be held a constructive trustee only if the law imposed upon him the obligation, regardless of intent, of acting in relation to the Peake property for plaintiffs as well as himself, or in preference to himself. The possible bases for imposing such a duty are the relationship of the Peake property to the *885 Crystal Lake property, the interests of the parties in the Crystal Lake property, the familial relationship and the professional relationship between defendant and plaintiffs. The first imposes no such obligation, however, for, as already noted, plaintiffs have not established any advantage under the Forestry Act in the acquisition of the Peake lot by the owners of the Crystal Lake property, and the contiguity of the parcels alone creates no duty. Nor on the facts of this case does the second, for when defendant bought the Peake lot in 1972 neither he nor his brother had any interest in the Crystal Lake property. That either or both might eventually inherit or be given their father’s half interest in it did not require that they act before such gift or inheritance as if they owned that interest.
Such familial or professional obligation as defendant had was satisfied by his bringing to plaintiffs’ attention the availability of the property for purchase. The facts that in 1965 defendant had prepared the Forestry Act application for the Crystal Lake property and that he worked out and gave to his father apportionments between plaintiffs and his father of the taxes on the property for some years did not make defendant the attorney for plaintiffs in relation to that property, and such other legal matters as the firm handled for plaintiffs gave rise to no duty on the part of a member of the law firm not to purchase land contiguous to plaintiffs. The opportunity to purchase came to defendant because of his representation of the Peakes, who testified that they offered it to defendant rather than for sale generally and that they thought it strange that John Miller, who asked Mrs. Peake for the key to a cabin on the property, “was butting in on us.”
Acquisition of the Peake lot by the owners of the Crystal Lake property, though it would have increased the acreage they held, was in no way necessary to their continued holding or use of their own property. Though we do not disagree with the law upon which the Appellate Division relied, we find no basis on the facts of this case in the law of contracts, agency, trusts or restitution for holding defendant to be a constructive trustee of the 83 acres acquired by him from the Peakes.