OPINION OF THE COURT
Chief Judge Wachtler.
This action arises from a course of medical treatment initiated by plaintiff, a transsexual, who sought to have his breasts augmented. He testified that, in July and again in December 1974, defendant Shiffman injected silicone into both *92 his breasts. By March 1975, his breasts became sore and red, and in December 1975, plaintiff returned to Shiffman for treatment of symptoms including severe pain, discoloration and lumps. Although Shiftman's treatments continued for approximately six months, they were unsuccessful.
Shiffman testified that plaintiff did not first consult him until December 1975, at which time his breasts had already been injured, and that he came only seeking treatment, not augmentation. Shiffman claimed he treated plaintiff until July 1976, but denied ever administering silicone injections. In September 1976, according to Shiffman, plaintiff revealed for the first time that his symptoms were caused by injections of mineral oil administered by a transsexual friend. Shiffman concluded there was nothing more he could do, and referred plaintiff to Dhaliwal, a plastic surgeon, who performed a bilateral subcutaneous mastectomy. Plaintiff testified he thought Dhaliwal was to perform only an "incision and drainage” and he did not consent to a mastectomy. Dhaliwal testified that he had fully explained the proposed procedure, its risks and consequences before obtaining plaintiff’s consent.
On September 20, 1976, plaintiff, recovering in the hospital from the surgery and, according to his testimony, still unaware he had undergone a mastectomy, talked an attendant into unwrapping his bandages. Shocked by the severity of his wounds, he checked out of the hospital against medical advice, and later developed a wound site infection which required another operation.
At the close of proof, plaintiff argued that Shiffman committed malpractice when he injected silicone into his breasts in July and December 1974, that Dhaliwal committed malpractice in the performance of the mastectomy, and that Dhaliwal had improperly failed to obtain informed consent for the procedure.
The court’s charge contained the following instruction on the issue of plaintiff’s culpability:
"The defendants claim that the plaintiff was guilty of negligence, that is, the failure to use ordinary care in permitting some third party to inject mineral oil into his breasts. And in leaving the Boulevard Hospital shortly after the surgery performed by Dr. Dhaliwal against medical advice.
"Mr. Suria denies anyone injected him with mineral oil. The burden is on the defendants to prove that the plaintiff was *93 negligent and that such negligence caused or contributed to plaintiffs injuries.
"Mr. Suria, as I say, was required to exercise reasonable care for his own health and safety. If you find that Mr. Suria failed to exercise such reasonable care either in having someone other than a licensed medical doctor inject a substance into his breast, or in failing to heed medical advice concerning the treatment to be followed, following surgery at Boulevard Hospital, then you may find that he was guilty of negligence.
"But, of course, if you find that the plaintiff did not permit some non-medical person to inject him with mineral oil, or if you find that a reasonable prudent person would have left Boulevard Hospital on the 20th of September under the same circumstances then, of course, you may find that Mr. Suria was not guilty of any contributory or comparative negligence, as we use that term.
"Negligence on Mr. Suria’s part would not prevent his recovering damages in this lawsuit. But it would result in a reduction in the amount to which he would otherwise be entitled to recover.”
The court then indicated he would be submitting special interrogatories which included the following questions:
"Did the Plaintiff [sic], Felix Shiftman, commit medical malpractice which malpractice was a proximate cause of the injuries sustained by the plaintiff, Luis Suria?”[1] "Did the defendant, Avtar Dhaliwal, commit medical malpractice, which malpractice was a proximate cause of injuries sustained by plaintiff Luis Suria?”
"Did the defendant, Avtar Dhaliwal, fail to adequately advise plaintiff, Luis Suria, of the surgery that Dr. Dhaliwal intended to perform, which failure was a proximate cause of injury to the plaintiff?”
"Was plaintiff, Luis Suria, guilty of any negligence which was a proximate cause of the injuries he has sustained?”
"What is the percentage of fault chargeable to:
"(a) Defendant Felix Shiftman?
"(b) Defendant Avtar Dhaliwal?
"(c) Plaintiff Luis Suria?”
*94 "What are the total damages sustained by plaintiff, Luis Suria, without deductions for his negligence, if any?”
After the jury had been discharged to commence deliberations, Shiffman’s counsel stated: "I take exception to the comparative negligence charge to the extent the offense of this case proceeded in 1975 and more properly fell into the control of the contributory negligence rule.” The court responded, "We do have a problem”, but took no further action.
The jury found that in July and December 1974 Shiffman committed malpractice that was a proximate cause of plaintiff’s injuries, that Dhaliwal did not commit malpractice but did fail to obtain plaintiff’s informed consent, which failure was a cause of plaintiff’s injuries, that plaintiff was guilty of negligence that was a cause of his injuries, that Shiffman was 60% at fault, Dhaliwal 15% and plaintiff 25%, and that plaintiff’s total damages were $2,000,000. The trial court dismissed the claim against Shiffman on the ground that plaintiff’s contributory negligence barred recovery and, reducing the amount of the verdict by 25%, the proportionate share of plaintiff’s fault, entered judgment in the principal amount of $1,500,000 against Dhaliwal alone.
On cross appeals by plaintiff and Dhaliwal, the Appellate Division modified, on the law and facts, by reinstating the verdict against Shiffman, denying his motion for a directed verdict, and ordering a new trial on the issue of damages unless plaintiff stipulated to reduce the verdict to $800,000, in which event a judgment, as so modified, was to be entered in favor of plaintiff and against Shiffman and Dhaliwal in accordance with the jury’s findings as to the relative responsibility and fault of the respective parties, and otherwise affirmed. In its decision, the Appellate Division noted that the record supported the jury’s finding that Shiffman committed malpractice, and concluded the trial court erred in directing a verdict in his favor. Further, the court stated, it need not reach the issue whether Dhaliwal was a successive, joint or concurrent tort-feasor, in light of its reinstatement of the verdict against Shiffman (107 AD2d 309).
The plaintiff stipulated to reduce the verdict pursuant to the Appellate Division’s conditional grant of a new trial, and a judgment was entered thereon. Shiffman filed a notice of appeal to our court, based on the substantial and, as to him, adverse modification by the Appellate Division (former CPLR 5601 [a] [iii]). Dhaliwal sought leave to appeal, which our court granted (65 NY2d 605). We now modify.
*95 The jury found that Shiffman committed his last act of malpractice in December 1974 and plaintiff, by his own admission, noticed the alleged after effects by March 1975. Thus, plaintiff’s cause of action against Shiffman accrued before September 1, 1975, and the principles of contributory rather than comparative negligence applied (CPLR 1413). Although Shiffman may have continued to treat plaintiff after his last act of malpractice, that later treatment did not delay accrual of the cause of action but merely tolled the running of the Statute of Limitations (see, Glamm v Allen, 57 NY2d 87, 93-94; McDermott v Torre, 56 NY2d 399, 407).
Thus, under the law of this case as submitted to the jury, if plaintiff acted negligently in permitting mineral oil injections before Shiffman’s malpractice, and that negligence was a proximate cause of his injuries, his claim against Shiffman should have been dismissed. However, if plaintiff’s postsurgical culpable conduct merely aggravated injuries already caused by Shiffman’s malpractice, his recovery would not be barred (see, Spier v Barker, 35 NY2d 444, 451). Similarly, negligent conduct of plaintiff would not have barred plaintiff’s recovery for Dhaliwal’s negligence, even if it had occurred before the effective date of the comparative negligence statute (CPLR 1413; see, e.g., Carpenter v Blake, 75 NY 12).
Given the court’s charge, which allowed the jury to find that plaintiff failed to exercise reasonable care in having someone other than a licensed medical doctor inject a substance into his breast, or in leaving the hospital against medical advice after his surgery, or both, the verdict is ambiguous. The answer to the interrogatory establishes only that plaintiff failed to exercise reasonable care, and that such failure is responsible for 25% of his injuries. It does not indicate which of the contentions the jury accepted. Defendant Shiffman claims the jury’s "general verdict” that plaintiff was guilty of negligence in some unspecified respect requires a new trial, though he concedes he did not request that a more detailed interrogatory be submitted to the jury on this issue.
This is not a case like Davis v Caldwell (54 NY2d 176), in which multiple theories of liability were submitted to a jury which was instructed to render a general verdict only. There, we reversed an Appellate Division order affirming a judgment in favor of the plaintiff entered upon the verdict, even though the defendant had not requested special interrogatories. We held that, there being insufficient proof of some but not all of *96 the theories, it was impossible to conclude that the verdict did not rest on a finding in the plaintiff’s favor on one of the theories that should not have been submitted to it for lack of proof at trial.
In Davis (supra), and in similar cases, the defendant had "preserved [her] rights” by moving to dismiss the causes of action alleged not to have been proven at trial (Phillipson v Ninno, 233 NY 223, 225). If the motion had been granted, and the causes of action as to which legally sufficient evidence had not been adduced at trial had been dismissed, the verdict would have been based on legally sufficient evidence and would have been sustained. Similarly, if the motion had no merit and was properly denied, all the causes of action or theories would properly have been submitted to the jury, and the verdict also would have been sustained. In these situations, we have noted: "It was not necessary for the defendant’s counsel to except[2] to the judge’s charge in order to preserve the force and effect of his exception taken to the denial of his motion made at the end of the case. That was the time and place for the judge to have made the ruling which the law says he should have made. Having excepted to the ruling, the defendant lost none of his rights because the judge subsequently expressed the same views more at length .in his charge to the jury. One exception upon the same ruling was as good as two.” (Elenkrieg v Siebrecht, 238 NY 254, 263.)
In the present case, whether either of the two theories of plaintiff’s comparative fault should have been submitted to the jury was not at issue. All parties agreed that sufficient proof of both had been adduced at the trial. The resulting inability to determine which theory the jury accepted was caused not by the trial court’s erroneous submission of one of the theories, but by the parties’ failure to request a special interrogatory to elicit that information.
It is undisputed that the only protest registered to the court’s special interrogatory was Shiffman’s counsel’s post-charge exception "to the comparative negligence charge to the extent the offense of this case proceeded in 1975 and more properly fell into the control of the contributory negligence rule.” In no way can this request (if timely, though it was made after the jury retired to consider its verdict [CPLR 4110- *97 b]) be considered a request for a special interrogatory.[3] Absent a proper request for the interrogatory the omission of which is now claimed to be error, no question of law is presented for our review (CPLR 4017, 5501 [a] [3]; Hunt v Bankers & Shippers Ins. Co., 50 NY2d 938, 940).
The question then becomes whether the courts below had the power to determine to which theory of plaintiff’s fault the jury’s general finding applied. Under prior law, the inadvertent omission of a material issue of fact from the special verdict submission could invalidate a judgment entered on it (4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4111.06; cf. Manning v Monaghan, 23 NY 539). However, CPLR 4111 (b) now provides, in pertinent part: "If the court omits [in the interrogatories submitted to the jury] any issue of fact raised by the pleadings or evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without demand, the court may make an express finding or shall be deemed to have made a finding in accordance with the judgment.”
After the jury rendered its verdict, finding plaintiff guilty of culpable conduct, the court directed a verdict in Shiffman’s favor, concluding that "the plaintiff was guilty of contributory negligence”, and reduced the verdict as to Dhaliwal by the 25% culpability the jury attributed to plaintiff. This finding was clearly in accordance with the judgment later entered, and could well have stood. However, the Appellate Division viewed the jury’s determination as a rejection of the mineral oil theory and an adoption of the contention that all of plaintiff’s culpable conduct consisted of his premature postoperative departure from the hospital. In accordance with CPLR 4111 (b), we deem this conclusion a contrary finding on that issue. When confronted with an Appellate Division order of modification which, as here, "has expressly or impliedly found new facts and a final judgment pursuant thereto is entered”, this court may also review questions of fact (CPLR 5501 [b]), in which case we will determine which of the findings more nearly comports with the weight of the evidence (Oelsner v *98 State of New York, 66 NY2d 636, 637; Miller v Merrell, 53 NY2d 881, 883; Electrolux Corp. v Val-Worth, Inc., 6 NY2d 556, 563). Having reviewed the transcripts of the trial testimony, we conclude that the findings of the Appellate Division more closely comport with the weight of the evidence.
We agree with defendant Dhaliwal’s contention that he was a successive, rather than joint or concurrent, tort-feasor, and that he was prejudiced by the Appellate Division’s refusal to reach this issue because if his liability was joint plaintiff could seek the full amount of the judgment against him. The jury specifically found that Dhaliwal was not negligent in his treatment of plaintiff, which did not occur until over a year after the injections had been completed; his liability was predicated on a failure to adequately advise plaintiff of the scope and risks of the surgery he performed.
When two tort-feasors neither act in concert nor contribute concurrently to the same wrong, they are not joint tort-feasors; rather, their wrongs are independent and successive. Although the original wrongdoer is liable for all the proximate results of his own tortious act, including aggravation of injuries by a successive tort-feasor, the successive tort-feasor is liable only for the aggravation caused by his own conduct (Derby v Prewitt, 12 NY2d 100; Dubicki v Maresco, 64 AD2d 645; Musco v Conte, 22 AD2d 121 [Hopkins, J.]).
Dhaliwal’s contention that the verdict against him is not supported by the evidence is without merit. Plaintiff testified that Dhaliwal told him that the purpose of the operation was to drain the infection from his right breast, that he would "see what he could do for the left breast” and that there would be just a small scar. In addition, plaintiff testified that the consent form he signed described the operation as "incision of the right breast”. Dhaliwal admitted that he changed the consent form, although he claimed to have done so in plaintiff’s presence. The record is not "devoid of proof’ (Davis v Caldwell, 54 NY2d 176, 180, supra) to support the jury finding that, but for lack of adequate information, a reasonable person in plaintiff’s position would not have undergone the surgery. In addition, there was plainly sufficient evidence to permit the jury to conclude that plaintiff incurred additional physical injuries in the form of scarring as a direct and proximate result of the procedure (Public Health Law § 2805-d [3]).
However, the courts below erred in not holding Dhaliwal a *99 successive tort-feasor. His liability should therefore be limited to the proportionate share of plaintiff’s damages attributable only to the aggravating effect of Dhaliwal’s own tortious act.
Accordingly, the order of the Appellate Division should be modified to provide that plaintiff is entitled to judgment against defendant Dhaliwal in the principal amount of $120,000, that being 15% of the verdict reduced by stipulation and against Shiffman in the principal amount of $480,000, without any right to contribution or indemnification. If plaintiff compels Shiffman, as the original tort-feasor, to pay more than $480,000 Shiffman will be entitled to recover the excess from Dhaliwal (CPLR 1402; see, Hill v St. Clare’s Hosp., 67 NY2d 72 [decided herewith]). As so modified, the order of the Appellate Division should be affirmed, with costs to Dhaliwal payable jointly by plaintiff and defendant Shiffman.
Judges Meyer, Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order modified in accordance with the opinion herein and, as so modified, affirmed, with costs to defendant Dhaliwal payable jointly by plaintiff and defendant Shiffman.

. A further interrogatory sought the approximate dates of Shiffman’s malpractice, if any, primarily because he had two successive carriers during the relevant period.

. Exceptions, of course, are no longer necessary (CPLR 4017).

. In his brief to our court, Shiffman concedes he took no exception to the court’s failure to submit a special interrogatory on this issue. However, he seeks review in the interest of justice, which we are without power to provide, the scope of our review being limited to questions of law (CPLR 5501 [b]; Cohen and Karger, Powers of the New York Court of Appeals § 115 [rev ed]).