OPINION OF THE COURT
Kaye, J.
While an employer may be liable for compensatory damages caused by false statements maliciously published by its employees in the course of employment, punitive damages for the same acts cannot be assessed against the employer in the absence of its complicity. The employer’s complicity not having been established here, the Appellate Division order allowing punitive damages against appellant, Lincoln First Bank, should be modified by striking the punitive damages award.
Plaintiff, first employed by Lincoln in 1975 as a loan collector, by 1979 had advanced to become a collection manager in the Consumer Credit Services Department, responsible for both debt collections and property repossession and disposition. His rise through the ranks was marked by several bank commendations.
At 5 p.m. on September 17, 1979, plaintiff was summoned to a meeting by Robert Mariano, a senior vice-president of the bank and manager of its Community Banking and Consumer Credit Services Departments, to discuss alleged improprieties uncovered in the course of an investigation conducted by defendants Robert Lee (a bank vice-president, manager of its Real Estate Division and Director of Security) and Frank Dovidio (an investigator in the Asset Protection Department of the bank’s Security Department). Mariano, Lee and Dovidio were at the meeting and, at plaintiff’s request, his immediate supervisor — Alan Stanwix — also attended.
*374 Two statements were allegedly made at this meeting — one by Dovidio, and one by Lee — that became the focus of plaintiffs slander action.[1] Defendants denied uttering either statement. First, plaintiff claims Dovidio stated, "I have enough against you for an indictment”, then threw an envelope containing tinfoil packets on the table and demanded, "Come on Ken, you know what these are. Have you ever used cocaine?” Plaintiff responded by denying ever having used cocaine, but claims these words and actions falsely imputed crimes dealing with possession and sale of controlled substances. Second, plaintiff claims Lee falsely accused him of larceny at the meeting when he stated, "We know that you gave a truck to Charles Johnson for bringing back a car from out of state. We’ve verified that this truck is registered in the name of Chuck Johnson.” Plaintiff explained that the truck had been repossessed in Texas, transported to New York free of charge by Charles Johnson, and sold to plaintiffs acquaintance for $800 above the value placed on it in Texas. While the file maintained on the truck was at the meeting, exculpatory documents setting forth the indicated value and the purchaser’s name had been removed. In response to plaintiff’s suggestion that his story could be verified, Lee allegedly responded: "We’ve got a statement saying that you gave this truck to Chuck Johnson. That’s all we need.”
At the conclusion of the meeting, Mariano said he would consider the matter overnight and, after viewing as well the written statements from other employees (see, n 1, supra), the next day terminated plaintiffs employment on the ground the bank had lost confidence in him. The present action followed. Plaintiff claimed that defendants’ slanderous statements resulted in his discharge and damaged his reputation in the banking community.
In a bifurcated trial, the jury first considered liability only, and found for plaintiff against all three defendants. Answering special questions, the jury found that Lee and Dovidio had made the statements attributed to them, that the statements were false, heard by other persons who reasonably understood them to disgrace or discredit plaintiff, uttered solely out of *375 malice, and injurious to plaintiff. After additional proof and a separate charge on damages, the jury awarded plaintiff $55,-000 in compensatory damages against Lee, Dovidio and the bank, and punitive damages totaling $133,000 — $22,000 as to Lee, $6,000 as to Dovidio and $105,000 as to the bank. On a posttrial motion to set aside the jury’s special findings and verdict (see, CPLR 4404 [a]), the trial court reduced compensatory damages to $35,500; reduced punitive damages against Lee and Dovidio to $10,000 and $3,000 respectively, crediting the excessive awards to "improper comments made by plaintiff’s counsel during his summations”; and struck the punitive damages award against the bank, concluding that the individuals’ assault on plaintiff’s character and reputation were "spontaneous and unforeseeable by the superior officers of Lincoln”, and that "[a]dequate monetary penalties were imposed on the parties responsible for the slanders.” On appeal by plaintiff and cross appeals by defendants, the Appellate Division modified on the law and the facts, by reinstating the punitive damages award against Lincoln, reversing all findings of fact inconsistent with its memorandum and making new findings as contained in the memorandum, and otherwise affirmed. Quoting O’Donnell v K-Mart Corp. (100 AD2d 488, 492), the court held that Lee, who was a bank vice-president, manager of its real estate department and director of corporate security, was a superior officer who " ’had sufficient managerial authority upon which to impose liability’ ” for punitive damages on Lincoln (109 AD2d, at p 1075). Alternatively, the court held that Lincoln had not included a "superior officer” charge in its request to charge and registered no objection to the charge given prior to submission of the case to the jury, thus failing to preserve its argument directed to Lee’s status as a superior officer.
All three defendants appealed as of right, but this court dismissed the appeals of Lee and Dovidio because they were not aggrieved by the modification at the Appellate Division (65 NY2d 811), and denied their motions for leave to appeal. Plaintiff’s cross motion for leave to appeal was dismissed on the ground that he was not aggrieved by a reduction in damages he stipulated to accept (66 NY2d 677).
While the Appellate Division modified the trial court’s order only as to punitive damages, still the modification affords defendant the right to appeal from all aspects of the order that aggrieved it (see, Dalrymple v Shults Chevrolet, 39 NY2d 795; Cohen and Karger, Powers of the New York Court *376 of Appeals § 50, at 224 [rev ed]). Lincoln challenges both its liability for compensatory damages and the punitive damages award.
The bank argues strenuously that the September 17 meeting was an example of corporate fairness and due process that should as a matter of policy be promoted not punished, that the statements were privileged, and that in any event the elements of slander were not established. However persuasive such contentions might be in the abstract, they are laid to rest by the record in this case. Statements among employees in furtherance of the common interest of the employer, made at a confidential meeting, may well fall within the ambit of a qualified or conditional privilege (see generally, Toker v Pollak, 44 NY 211, 219; Stukuls v State of New York, 42 NY2d 272; Shapiro v Health Ins. Plan, 7 NY2d 56; Rezey v Golub Corp., 73 AD2d 772, affd, 52 NY2d 713; PJI 3:32 [1986 Cum Supp]). But the privilege is conditioned on its proper exercise, and cannot shelter statements published with malice or with knowledge of their falsity or reckless disregard as to their truth or falsity (see, O’Rorke v Carpenter, 55 NY2d 798, 799; Restatement [Second] of Torts §§ 599-600, 603 comment a; Prosser and Keeton, Torts § 115, at 833-835 [5th ed]). Here, the jury found that the two subject statements were false, that Lee and Dovidio "solely from malice intend[ed] to injure plaintiff when [they] made the statements”, that the statements were made "solely as a result of [the individuals’] malice toward plaintiff”, and that they injured plaintiff. Where, as here, there is some evidence to support the jury’s findings, they are beyond the scope of our review (see, Cohen and Karger, Powers of the New York Court of Appeals § 108 [rev ed]).
 Next, Lincoln challenges the compensatory damages award on the ground that, if the individual defendants were acting solely from malice they necessarily could not have been acting in the scope of their employment. But no such objection was taken to the charge either as to liability or as to compensatory damages, which therefore places the issue beyond our review (see, CPLR 4110-b). Indeed, the liability segment of the case was presented throughout as if the bank and each individual were to be viewed as one. While the court charged that the bank would be liable only for acts of its employees within the course of employment, the special findings forms prepared by defense counsel permitted the jury to return findings only as to the individuals and the bank jointly. No request was *377 made to separate the individuals from the entity. In this posture, the bank cannot now complain of error (see, Up-Front Indus, v U. S. Indus., 63 NY2d 1004, 1006; Bichler v Lilly & Co., 55 NY2d 571, 583-584). Finally, Lincoln asserts that as a matter of law no publication was made. For purposes of a slander claim, however, it is clear that a false and malicious utterance by one employee to another can be actionable (see, Ostrowe v Lee, 256 NY 36; Kennedy v James Butler, Inc., 245 NY 204; Pirre v Printing Devs., 468 F Supp 1028, 1041, affd 614 F2d 1290; PJI 3:23 [1986 Cum Supp]). While others in attendance at the meeting may have denied hearing the statements plaintiff alleges were made in their presence, this credibility issue was resolved against the bank. The jury found, in particular, that the Lee and Dovidio statements were heard by two others and reasonably understood by them to disgrace or discredit plaintiff.
We therefore agree with the Appellate Division that the bank’s liability for compensatory damages should be affirmed, and turn to the punitive damages issue.
Consonant with risk allocation theories, liability for compensatory damages is properly placed on an innocent employer for slander by its agents committed in the course of employment (see, Lake Shore & Mich. Ry. Co. v Prentice, 147 US 101, 110; Cleghorn v New York Cent. & Hudson Riv. R. R. Co., 56 NY 44, 47; Prosser and Keeton, Torts § 70, at 505 [5th ed]). But punitive damages are a different matter entirely. Unlike damages that compensate an individual for injury or loss, punitive damages — damages over and above full compensation, and in that sense a windfall for the plaintiff — serve the societal purposes of punishing and deterring the wrongdoer, as well as others, from similar conduct in the future (see, Walker v Sheldon, 10 NY2d 401, 404). Because of a dual recognition that blameless shareholders or owners likely suffer the ultimate burden of punitive damages vicariously imposed on an employer, and yet vicarious punitive damages can advance the goal of deterrence by motivating the employer to take corrective action, the issue of vicarious liability for punitive damages has for decades fueled heated controversy among courts and commentators. Indeed, it has been described as "chief’ among the debates surrounding punitive damages (see, Prosser, Torts § 2, at 12 [4th ed]; see also, Parlee, Vicarious Liability for Punitive Damages: Suggested Changes in the Law Through Policy Analysis, 68 Marq L Rev 27 [1984]; Comment, Recovering Punitive Damages from Employers: The Practical *378 Application of the Restatement [Second] of Torts § 909, 18 Land & Water L Rev 671 [1983]; Ellis, Fairness and Efficiency in the Law of Punitive Damages, 56 S Cal L Rev 1, 63-71 [1982]; Owen, Punitive Damages in Products Liability Litigation, 74 Mich L Rev 1257, 1299 [1976]; Comment, The Assessment of Punitive Damages Against an Entrepreneur for the Malicious Torts of his Employees, 70 Yale LJ 1296 [1961]; and Morris, Punitive Damages in Tort Cases, 44 Harv L Rev 1173, 1199 [1931]).
In this State, the question has long been settled: an employer is not punished for malicious acts in which it was not implicated. While the decision to award punitive damages in any particular case, as well as the amount, are generally matters within the sound discretion of the trier of fact, there is a threshold issue: punitive damages can be imposed on an employer for the intentional wrongdoing of its employees only where management has authorized, participated in, consented to or ratified the conduct giving rise to such damages, or deliberately retained the unfit servant (Cleghorn v New York Cent. & Hudson Riv. R. R. Co., 56 NY 44, 47-48, supra; Craven v Bloomingdale, 171 NY 439; Stevens v O’Neill, 51 App Div 364, affd 169 NY 375), or the wrong was in pursuance of a recognized business system of the entity (Rose v Imperial Engine Co., 127 App Div 885, 887, affd 195 NY 515). Put another way, this “complicity rule” — in essence the position adopted by the Restatement (Second) of Torts § 909 and the Restatement (Second) of Agency § 217 C — results in employer liability for punitive damages only when a superior officer in the course of employment orders, participates in, or ratifies outrageous conduct (see, Morris, Punitive Damages in Personal Injury Cases, 21 Ohio State LJ 216, 221 [I960]; Roginsky v Richardson-Merrell, Inc., 378 F2d 832, 842).[2]
No serious contention is made before us that Lincoln authorized or ratified the Lee and Dovidio statements, or deliberately retained unfit employees, or promulgated such statements as part of its regular business policy.[3] The issue thus is *379 whether Lee (who was superior in rank to Dovidio) was a "superior officer” so as to equate his conduct with participation by Lincoln and provide a basis for imposing punitive damages on the bank.
Initially, we reject the Appellate Division conclusion that the issue was not preserved for review. After the jury’s verdict, proof was taken on damages — consisting solely of an agreed statement as to the net worth of each defendant — and the jury was charged with respect to compensatory and punitive damages. The court instructed the jury that punitive damages could be assessed against each defendant based on the earlier findings on liability: "You have already determined by your answers to the questions submitted to you on Monday that the Defendants did act with malice, the individual Defendants. You may award under those circumstances punitive damages, and you may fix as punitive damages, the amount you fix need bear no relationship to the amount you award for compensatory damages.” But malice for one purpose is not malice for every purpose. The court’s error — equating an agent’s malice sufficient under the doctrine of respondeat superior for compensatory damages against the employer, with the employer’s own complicity necessary for punitive damages — drew timely objection from defense counsel, who protested that there was no basis for punitive damages against the bank. Counsel objected, first, because a finding that malice solely motivated Lee and Dovidio necessarily precluded a finding that they acted in the scope of employment and, second, because "there’s nothing showing sufficient proof of authorization, ratification or condonation of the acts of Lee and Dovidio.” While the first objection was properly rejected— "culpable recklessness” (which was charged to the jury) being one form of malice that can be fully consistent with scope of employment — the second should have alerted the trial court to the need for further instruction regarding a predicate for punitive damages against the bank, but the court declined to give any. Had plaintiff at that point perceived that a "superior officer” finding in particular furnished the necessary predicate for punitive damages against the bank, he might have sought such an instruction; his theory, however — like that of the trial court at the time the charge was given — was that punitive damages could be awarded against the bank on the showing of malice already made as to the individuals. In these circumstances, the failure to request a "superior officer” charge *380 cannot be laid at defendant’s door, or place the issue beyond our review.
The jury thus received no instruction as to what facts were to be found before any punitive damages could be awarded against the bank, and — after hearing evidence of the bank’s net worth — proceeded directly to the question whether punitive damages should be awarded, and in what amount. Where the case was submitted on special questions, and where neither party requested inclusion of the fact question whether Lee was a "superior officer”, both parties are deemed to have waived their right to a trial by jury of the omitted issue (see, CPLR 4111 [b]; Suria v Shiffman, 67 NY2d 87). The trial court, on a posttrial motion, made findings of fact that Lee was "not entrusted with management of the bank,” but was "an ordinary bank officer” and it struck the punitive damages award. The Appellate Division, by contrast, found on the facts that Lee had "sufficient managerial authority” upon which to impose punitive damages liability on the bank and reinstate the verdict. "When confronted with an Appellate Division order of modification which, as here, 'has expressly or impliedly found new facts and a final judgment pursuant thereto is entered’, this court may also review questions of fact (CPLR 5501 [b]), in which case we will determine which of the findings more nearly comports with the weight of the evidence (Oelsner v State of New York, 66 NY2d 636, 637; Miller v Merrell, 53 NY2d 881, 883; Electrolux Corp. v Val-Worth, Inc., 6 NY2d 556, 563).” (Suria v Shiffman, 67 NY2d 97-98, supra.) Having reviewed the evidence, we conclude that the trial court’s findings more closely comport with the weight of the evidence.
The term "superior officer” obviously connotes more than an agent, or "ordinary” officer, or employee vested with some supervisory or decision-making responsibility. Indeed, since the purpose of the test is to determine whether an agent’s acts can be equated with participation by the employer, the term must contemplate a high level of general managerial authority in relation to the nature and operation of the employer’s business (see, Crane v Bennett, 77 App Div 102, affd 177 NY 106; Rose v Imperial Engine Co., 127 App Div 885, 887, affd 195 NY 515, supra). This is not to suggest, however, that a "superior officer” can only be found in the executive suite or topmost reaches of corporate government (see, Doralee Estates v Cities Serv. Oil Co., 569 F2d 716, 722). The agent’s level of responsibility within the entity should be sufficiently high *381 that his participation in the wrongdoing renders the employer blameworthy, and arouses the "institutional conscience” for corrective action (see, Doralee Estates v Cities Serv. Oil Co., supra, citing Morris, Punitive Damages in Personal Injury Cases, op. cit., 21 Ohio St LJ 216, 221), thus serving both the punishment and the deterrence goals of punitive damages.
By this standard we conclude that, on the record before us, Lee was not a "superior officer”. The Appellate Division found determinative the fact that Lee was "a vice-president and manager of the real estate department and director of corporate security” (109 AD2d, at p 1075). But the job titles do not convey what significance his responsibilities may have had in terms of management of this bank; plaintiff himself testified that in 1977 the bank had possibly 150 managers. Indeed, the record lacks evidence that Lee had any significant managerial function in relation to bank operations. Plaintiff points, first, to the testimony of Lee to the effect that his job "entailed the management of all real estate owned or leased in the Rochester division,” which had an estimated value of $100-150,000,000 and, second, to an organization chart showing the positions of the individual defendants within the Real Estate Management Department. Neither, however, reveals the function of the managerial employee in relation to the nature and operation of the employer’s business. Some evidence of Lee’s function and authority within the bank may be found in the transaction before us. The power to terminate plaintiff apparently resided with Mariano, not with Lee. Mariano, not Lee, was responsible for convening the September 17 meeting. Indeed, the thrust of plaintiff’s argument on malice is, and was to the jury, that Lee — pursuing a grievance against plaintiff for embarrassing him before his superiors— duped Mariano in order to obtain plaintiff’s dismissal. Given the state of the record on which this issue must be determined, we conclude that the finding of the trial court that in the circumstances Lee was not a "superior officer” for purposes of imposing punitive damages on the bank more closely comports with the weight of the evidence.
Accordingly, the judgment appealed from and order brought up for review should be modified, with costs to appellant, by striking the award of punitive damages against appellant and, as so modified, affirmed.
Chief Judge Wachtler and Judges Meyer, Simons, Alexander and Titone concur; Judge Hancock, Jr., taking no part.
*382 Judgment appealed from and order of the Appellate Division brought up for review modified, with costs to appellant, in accordance with the opinion herein and, as so modified, affirmed.

. The bank held three signed statements from other employees alleging in part that bank employees had performed personal errands for plaintiff on bank time; that he had used or possessed marihuana; and that his friends had been involved in questionable purchases of repossessed property. These statements were not produced at the meeting, and are not the basis of plaintiff’s slander claim.

. Apparently 24 states have adopted the complicity rule, and 18 states have the vicarious liability rule. (See, Ghiardi & Kircher, Punitive Damages Law and Practice §§ 5.05-5.13 & Table 5-1 [1985 Cum Supp]; Note, Corporate Vicarious Liability for Punitive Damages, 1985 BYU L Rev 317; Parlee, Vicarious Liability for Punitive Damages: Suggested Changes in the Law Through Policy Analysis, 68 Marq L Rev 27, 31-32.)

. The constitutional challenges to punitive damages made by defendant before the trial court are not repeated on this appeal.