OPINION OF THE COURT
William H. Keniry, J.
This application by defendant St. Mary’s Hospital of Troy (St. Mary’s Hospital) seeks an order resettling the judgment entered by plaintiff in the Rensselaer County Clerk’s office on July 22, 1988 and retaxing the accompanying bill of costs. St. Mary’s Hospital contends that the judgment entered against it in the sum of $1,125,000 fails to reflect the jury’s finding that plaintiff was found to be 10% negligent and that, pursuant to CPLR article 14-A, a 10% reduction in the verdict entered against the hospital was required. St. Mary’s Hospital also contends that the sums of $9,428 for trial transcripts and $6,149.78 for copying expenses were improperly taxed by plaintiff as disbursements. Plaintiff opposes the motion and cross-moves for an order awarding him the sum of $3,000 as additional costs pursuant to CPLR 8303 (a) (2).
St. Mary’s Hospital’s motion seeking a reduction of the verdict by $125,000 is premised upon the application of CPLR 1411 which states: "In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages.”
*602 In considering the application of CPLR 1411 in this case, a brief overview of the underlying facts and the jury’s findings is warranted. Plaintiff sustained a severe left leg fracture on June 10, 1979 when the motorcycle upon which he was a passenger collided with an automobile at the intersection of Congress Street and Pawling Avenue in the City of Troy. Taken to St. Mary’s Hospital, plaintiff underwent emergency surgery and postoperatively he developed complications which ultimately resulted in permanent brain damage.
Plaintiff commenced an action against the administrator of the estate of the deceased motorcycle owner/operator (David M. Alderman); the owner and operator of the automobile (Catherine Shanley and John J. Shanley); the orthopedic surgeon who operated on plaintiff (Dr. Ajit S. Khanuja) and St. Mary’s Hospital. Third-party actions were initiated against the City of Troy and the anesthesiologist (Dr. Melba Antonetti). There were thus essentially two separate cases which were tried before this court. The jury exonerated the City of Troy, Dr. Khanuja and Dr. Antonetti and returned a verdict in plaintiff’s favor against the Alderman estate, defendants Shanley and St. Mary’s Hospital.
The jury made the following specific findings which pertain to the issues raised in this motion:
1. that with respect to the motorcycle/automobile collision, the jury found that defendants Shanley were 50% at fault; defendant Alderman estate was 40% at fault and the plaintiff himself was 10% at fault;
2. with respect to the malpractice claim, the jury found that St. Mary’s Hospital alone was 100% at fault;
3. the jury concluded that plaintiff’s total damages amounted to $2,250,000; and
4. the jury concluded that the motor vehicle collision defendants were responsible for 50% of plaintiff’s total damages and the malpractice defendants were responsible for 50% of plaintiff’s total damages.
This case presents a classic example of successive and independent tort-feasors. That is, the initial tort-feasors, defendants Shanley and Alderman, are liable to plaintiff for all damages proximately caused by their wrongful acts including the aggravation of his initial injuries or any foreseeable new injuries that their initial conduct precipitated (Milks v Mclver, 264 NY 267). The successive tort-feasor, defendant St. Mary’s Hospital, is liable only for the separate injuries which its *603 conduct caused (Derby v Prewitt, 12 NY2d 100). The jury in this case, unlike the situation in Ravo v Rogatnick (70 NY2d 305), was able to apportion the plaintiff’s total damages between the initial (Shanley and Alderman) and subsequent (St. Mary’s Hospital) tort-feasors.
In preparing his judgment, plaintiff reduced the total award by 10% and entered judgment for $2,000,000 exclusive of interest and costs against defendants Shanley and Alderman. A judgment in such an amount reflects that defendants Shanley and Alderman were the initial tort-feasors responsible for the injuries which directly flowed from the accident and the additional foreseeable injuries caused by the malpractice of St. Mary’s Hospital. Plaintiff’s judgment against St. Mary’s is in the amount of $1,125,000 exclusive of interest and costs. The hospital argues that such amount is incorrect and that the judgment against it should be $1,000,000. In substance, St. Mary’s contends that the judgment against it does not reflect any reduction for the jury’s finding that plaintiff was found to be 10% at fault for the initial accident.
Plaintiff in opposition argues that as a matter of fact and law the plaintiff was not guilty of any negligence which contributed to the damage that he sustained as the result of the subsequent medical malpractice of St. Mary’s Hospital and that therefore the jury’s holding that the hospital was responsible for 50% of his total damages is properly reflected by the judgment as entered.
This situation presents a novel question. As stated in Arbegast v Board of Educ. (65 NY2d 161, 168, 169), "for the statute [CPLR 1411] to operate, plaintiff’s conduct must be a cause in fact of his or her injury. When it is, the statute 'requires that the culpable conduct attributable to the decedent or claimant be compared with the total culpable conduct which caused the damages’ ”.
In this case the only basis for the jury to conclude that plaintiff was contributorily negligent stemmed from the court’s charge which stated:
"A passenger of a motor vehicle has the duty to exercise reasonable care for his own safety. Reasonable care means that degree of care that a reasonably prudent person would exercise under the same circumstances.
"In determining whether plaintiff exercised reasonable care, you will consider all of the facts and circumstances as you find them to have been, including the plaintiff’s knowledge of the competency, ability, skill and condition of the driver.
*604 "In this case, you must decide whether David Alderman’s ability to properly operate his motorcycle was adversely impaired by his consumption of alcohol, and, if so, whether the plaintiff was aware of the driver’s impairment, and, if you find that such awareness existed, whether plaintiff by becoming a passenger on the motorcycle failed to exercise reasonable care for his own safety. If you find that plaintiff failed to exercise reasonable care, you must then decide whether such failure was a proximate cause of his injuries.
"You must also decide whether the Alderman motorcycle prior to the accident was speeding and/or was being operated in some type of race with another motorcycle, before the accident.
"If you find that plaintiff failed to exercise reasonable care, you must then decide whether such failure was a proximate cause of his injuries. If you find that plaintiff did exercise reasonable care for his own safety or, though he did not, such failure was not a proximate cause of his injuries, your finding will be that the plaintiff was not negligent. If you find that the plaintiff did not exercise reasonable care for his own safety and such failure was a proximate cause of his injuries, your finding will be that the plaintiff was negligent.”
There was, according to the court’s recollection, no specific request to charge that the plaintiff was contributorily negligent with respect to the subsequent medical treatment. Based upon the testimony there was no evidence to indicate that plaintiff was negligent at any time after he was admitted to the hospital.
In the court’s opinion, the jury’s finding of contributory negligence was solely directed to the motor vehicle accident and the injuries flowing directly therefrom. In Suria v Shiftman (67 NY2d 87), the Court of Appeals adopted the factual finding made by the Appellate Division that plaintiff was negligent in his premature postoperative departure from the hospital. Thus, the plaintiff’s contributory negligence in that case was a direct cause-in-fact of the additional injuries he sustained due to Dr. Dhaliwal’s negligence. This case is distinguishable from Suria (supra) since there is no specific finding that Allen Clickner was himself negligent after he was admitted to the hospital. The jury in this case expressly found that 50% of plaintiff’s total damages was caused by St. Mary’s Hospital negligence.
The court in its research has found no precedent which *605 addresses the issue of whether a plaintiff who was injured in an accident which was his fault, in whole or in part, and then was the victim of malpractice should have his malpractice verdict reduced by the percentage of his initial negligence. Take the hypothetical situation wherein a person is injured solely as the consequence of his own negligence (i.e., driver runs a red light while intoxicated and strikes a tree). The driver is treated at a hospital for his injuries where he is the victim of negligent medical care which causes additional injuries. But for our hypothetical person’s initial carelessness, he would never have injured himself and required medical care. Thus, he should be completely barred from any recovery from the subsequent tort-feasor if CPLR 1411 is applied as St. Mary’s advocates. That is not the law since CPLR 1411 requires that the culpable conduct of an injured person be related to the culpable conduct which caused his damages. In this case, the jury assessed the total damages of the plaintiff and further determined that his damages were equally caused by each of the separate incidents. Plaintiff’s negligence in this case was complete by the time he reached the emergency room of St. Mary’s Hospital. Thereafter, he was blameless for the additional injury inflicted upon him. Under the particular circumstances of this case, plaintiff’s culpable conduct in riding on a motorcycle whose operator had been drinking and perhaps was speeding and thereafter in failing to get off, bore no relationship to the subsequent culpable conduct of St. Mary’s Hospital. The plaintiff’s negligence, in this court’s opinion, was not a cause-in-fact of the additional injuries he sustained at the hands of St. Mary’s Hospital. Based upon the specific findings returned by the jury, St. Mary’s Hospital was not entitled to a setoff of 10% to reflect the plaintiff’s culpable conduct. The judgment entered against the hospital in the principal sum of $1,125,000 is proper. Defendant St. Mary’s Hospital’s motion to resettle that aspect of the judgment is denied, without costs.
Turning to the propriety of plaintiff’s assessment of taxable disbursements against defendant St. Mary’s Hospital of $9,428 for trial transcripts and $6,149.78 for copying, the court must apply the provisions set forth in CPLR article 83. CPLR 8301 (a) (12) provides that taxable disbursements may include "such other reasonable and necessary expenses as are taxable according to the course and practice of the court, by express provision of law or by order of the court”. Photocopying expenses have generally not been allowed as taxable disburse *606 ments (Matter of Guggino, 166 Misc 424). Likewise, efforts to tax the cost of trial transcripts have ordinarily been rejected (Maisto v Maisto, 85 AD2d 717; Hempstead Bank v Ryan, 42 AD2d 779; but see, Sterling Opt. Co. v University of State N. Y., 56 Misc 2d 54). In this case, plaintiff, along with other parties, regularly ordered daily transcripts of testimony and used those transcripts for personal trial preparation. The transcripts were not obtained at the request of the court but rather were procured by counsel to assist in preparation for later trial days. The expenses were considerable but, in view of the large verdict returned in plaintiff’s favor, were worthwhile. In the court’s opinion, taxation of the costs of such transcripts is not warranted.
In view of the volume of medical and hospital records produced during the trial and the number of lengthy exhibits marked for identification, the sum incurred by plaintiff for copying is not surprising. Plaintiff, on this motion, does not particularize its copying expense and the court can only conclude that such copying was a necessary part of plaintiff’s trial preparation. In the court’s opinion, the cost of such efforts is not a taxable disbursement.
Defendant St. Mary’s Hospital’s motion to strike the sum of $9,428 and $6,149.78 from the bill of costs is granted, without costs. The clerk shall retax costs accordingly.
The final issue is plaintiff’s cross motion for an allowance of additional costs in the amount of $3,000 pursuant to CPLR 8303 (a) (2) on the grounds that the case was a difficult or extraordinary one. Relief under CPLR 8303 (a) (2) is discretionary and the statute has been construed to not apply in negligence actions (McGrath v Irving, 24 AD2d 236; Marcus v New York City Hous. Auth., 80 AD2d 844). Although the length of the trial (five months) exceeded all expectations, the court finds no basis to award the additional allowance. The cross motion is denied, without costs.