OPINION OF THE COURT
Ciparick, J.
Section 115-b of the Domestic Relations Law provides that a biological parent may execute or acknowledge a consent to a private-placement adoption before a Judge or Surrogate, who must inform the parent of the consequences of giving the consent and must also advise the parent of the right to counsel of his or her own choosing. At issue in this case is whether the failure of the Surrogate to inform petitioner that she was entitled to counsel of her own choice invalidates her consent when petitioner indicated that she had a lawyer and when the Surrogate, in the presence of the lawyer, explained the consequences of her consent and ascertained that the consent was freely and knowingly given. We hold that under the facts and circumstances presented here, the Surrogate’s failure to so inform the petitioner did not invalidate her consent and therefore reverse the Appellate Division order.
Petitioner Chaya A. (now known as Chaya S.) and Asher A. were married on August 18, 1985. By November 1985, both parties realized that the marriage was a "big mistake” and petitioner returned to live at home with her parents, respondents Frederick and Sydell L. At the time of separation, petitioner was two months pregnant. Petitioner sought advice from a Rabbi especially knowledgeable about obtaining a Jewish religious divorce, a Get, in difficult circumstances. The Rabbi, in turn, referred petitioner to an attorney, Sheldon Eisenberger, whose law firm Handel, Weiss, Campise, Eisenberger and Handel was subsequently retained to represent petitioner in obtaining a civil divorce.
During divorce negotiations Asher declared that he did not want any financial responsibility for the unborn child and *393 requested that petitioner have an abortion. Petitioner would not agree to an abortion. Adoption of the child was discussed and respondents expressed a willingness to adopt their grandchild. Asher agreed that if the child was adopted and he was thereby relieved of any possible future financial responsibility he would, in exchange, give petitioner a Get.
Patricia Mandel, Esq., Eisenberger’s partner, negotiated the details of a separation agreement on petitioner’s behalf. She met with petitioner several times and had numerous telephone consultations explaining to her the terms of the separation agreement "from the first words to the last,” including the legal ramifications of consenting to adoption. Petitioner took an active interest in all aspects of the negotiations and queried Mandel about specific terms of the agreement. The final agreement dated April 1, 1986, provided in pertinent part:
"ARTICLE XV
"LEGAL REPRESENTATION
"The parties represent to each other that the wife has been represented by mandel weiss campise eisenberger and mandel, 11 East 36th Street, New York, New York 10016, and the husband has been represented by naimark & tannenbaum, 169-91 137th Avenue, Jamaica, New York, 11434 * * *
"ARTICLE XVII
"MAINTENANCE AND CHILD SUPPORT * * *
"Child Support
"The Wife states that she is pregnant. The parties hereby unconditionally agree that upon the birth of said issue, said issue will be adopted by the parents of the Wife. The parties hereby state that they have considered the matter carefully, have not been subject to duress or pressure of any kind from any person whatsoever, and they irrevocably consent to the future adoption of said issue by the parents of the Wife herein * * *
"ARTICLE XVIII
"ADOPTION AND WAIVER
"The parties acknowledge and agree that by sign *394 ing this Agreement, they have executed, and acknowledged their irrevocable consent to the adoption of the issue after the birth of said issue by the parents of the Wife. The Husband’s/Wife’s consent to the adoption of the issue of the marriage is the primary consideration for the Wife’s/Husband’s waiver of maintenance, child support and her/his interest in the cash assets of the parties.”
Petitioner signed the agreement initialing it in six different places where handwritten corrections were inserted. She received a Get the same day.
The child, now known as Emuna L., was born on June 13, 1986. A petition for adoption was filed on September 15, 1986, on behalf of the adoptive parents by Mandel. Petitioner appeared before the Surrogate in Queens County to execute a judicial consent to the adoption (see, Domestic Relations Law § 115-b [2]). Also present was Mandel who reviewed the adoption documents with petitioner. The Surrogate asked petitioner what she would do if the natural father refused to give his consent. Petitioner responded, "I would consult with my lawyer and see what options we have.” Prior to obtaining petitioner’s written consent, the Surrogate explained to her the consequences of executing a consent, pointing out that although the adoptive parents were also petitioner’s parents and that she lived with them in . the same household, she would have "absolutely no say or control over the child’s education, future, health or anything else.” Petitioner acknowledged that she understood and that her consent was voluntary.
Asher, accompanied by his counsel, appeared before the same Surrogate on March 26, 1987. Upon questioning, he informed the Surrogate that he had consulted with his attorney, that he understood the import of the papers and that he was executing the consent of his own free will. The order of adoption became final on July 9, 1987. Mandel represented petitioner in her divorce which became final on August 12, 1988. The divorce incorporated the terms of the Separation Agreement executed on April 1, 1986.
Petitioner remarried and for a time respondents allowed petitioner and her new husband to have visitation with Emuna. However, respondents subsequently cut off petitioner’s access to the child, prompting petitioner to seek nullification of the adoption on the grounds that her consent had been procured by fraud and that she had not been represented by independent counsel.
*395 Petitioner applied for a temporary order of visitation pending the outcome of the petition to vacate the adoption which was denied. The trial court subsequently denied petitioner’s motion for summary judgment concluding that the transcript of petitioner’s appearance before the Surrogate who accepted the consent "indicate[d] that the Surrogate advised the natural mother of the consequences of her act” and that petitioner made "statements * * * that would cause the Court to reasonably infer that she was represented by counsel, whether it be the attorney present in the room at that time or some other attorney.”
Following a nonjury trial the court found that petitioner had retained the firm of Mandel, Weiss, Campise Eisenberger and Mandel "to represent her in connection with obtaining of a Get, the matrimonial proceedings and all incidental and related matters” and that, consequently, she was represented by counsel during the adoption proceeding. In spite of Handel’s testimony that she represented the adoptive parents, the trial court concluded that Mandel did not provide legal counsel to them but was listed as their attorney on the petition for adoption merely as an "accommodation” to them. Finding petitioner’s testimony of fraud and duress "inconsistent, incredible and totally unworthy of belief,” the trial court dismissed the petition to void the adoption.
The Appellate Division reversed on the ground that the Surrogate failed to advise petitioner of her right to counsel of her own choosing in accordance with Domestic Relations Law § 115-b (2) (b). Disagreeing with the trial court, the Appellate Division concluded that petitioner was not represented by counsel and that Mandel in fact represented the adoptive parents. Specifically, the Appellate Division noted that Handel’s fee was paid by the adoptive parents, she was listed as attorney on the adoption petition, had signed an affidavit attesting to her representation of the adoptive parents and had testified at trial to the same effect.
Pursuant to section 115-b (2) (a) of the Domestic Relations Law, consent of a biological parent to a private placement adoption may be executed before a Judge or Surrogate with jurisdiction over adoptions. The governing statute provides: "At the time that a parent appears before a judge or surrogate to execute or acknowledge a consent to adoption, the judge or surrogate shall inform such parent of the consequences of such act pursuant to the provisions of this section, including informing such parent of the right to be represented by legal counsel *396 of the parent’s own choosing” (Domestic Relations Law § 115-b [2] [b]).
Section 115-b, as originally enacted (see, L 1972, ch 639, § 3), was designed to "introduce certainty and finality by limiting a parent’s right to revoke consent, with the stated intention of balancing the rights of surrendering parents, adoptive parents and children” (Matter of Sarah K., 66 NY2d 223, 234, cert denied sub nom. Kosher v Stamatis, 475 US 1108). Prior to a 1986 amendment of the statute, the court was required to explain to the biological parents the consequences of an irrevocable consent to adoption and to ensure that their consent was knowing and voluntary (see, L 1972, ch 639, § 3; Matter of Sarah K., supra, 66 NY2d, at 239).
In 1986, Domestic Relations Law § 115-b was amended to further promote the statutory goal of finality in adoptions by providing additional safeguards "to insure voluntariness and knowing consent” (Mem of Off of Ct Admin [recommending approval of L 1986, ch 817], 1986 McKinney’s Session Laws of NY, at 3394). Pursuant to the 1986 amendment, in addition to informing the biological parent of the right to counsel of his or her own choosing, the court is also required to inform the parent of the availability of counseling services and the right of indigent persons to the assignment of counsel in cases involving a custody dispute or a contested proceeding to revoke consent to an adoption (Domestic Relations Law § 115-b [2] [b], as amended by L 1986, ch 817). The amendment thus established a series of checks to ensure that birth parents fully comprehend the permanent and profound nature of their consent to adoption.
In the instant case, it is undisputed that the Surrogate did not inform petitioner that she had a right to counsel of her own choosing. The parties dispute, however, whether she was in fact already represented by counsel as she stood with a lawyer before the court. Respondents contend, and the trial court agreed, that petitioner was represented by counsel. Petitioner counters, as found by the Appellate Division, that Mandel in fact represented only the adoptive parents and that petitioner was not represented by counsel.
We conclude that the trial court’s determination that petitioner retained counsel "to represent her in connection with the obtaining a Get, the matrimonial proceedings and all incidental and the related matters” including the adoption more nearly comports with the weight of the evidence (see, *397 Loughry v Lincoln First Bank, 67 NY2d 369, 380). As found by the trial court, the adoption proceeding was an intrinsic part of the matrimonial and Get negotiations and proceedings. Mandel negotiated the separation agreement on petitioner’s behalf and "spent a lot of time explaining” to petitioner the legal ramifications of the agreement. She reviewed every aspect of the agreement "from the first words to the last” explaining to petitioner that it entailed giving up her child for adoption.
Although Mandel nominally filed the adoption petition on behalf of the adoptive parents, the record reflects that her discussions were with petitioner. On the day of the judicial consent hearing, she reviewed and explained the adoption papers to petitioner. Significantly, when the Surrogate asked petitioner what she would do if her husband did not consent, she responded "I would consult with my lawyer and see what options we have.” Petitioner’s statement clearly indicated to the Surrogate that she already had counsel at the adoption proceeding.
At the time petitioner appeared before the Surrogate, an attorney’s dual representation of the biological parent and the adoptive parent was permissible (see, Carrieri, Practice Commentaries, McKinney’s Cons Laws of NY, Book 52A, Social Services Law § 374 [6], at 451). Hence, Mandel’s appearance as attorney for the adoptive parents did not preclude her representation of petitioner.
Petitioner argues that the participation of Mandel "tainted” her consent. On the record before us, we disagree. Of course, separate representation of biological and adoptive parents avoids any potential conflict of interest on the part of an attorney and provides énhanced assurance that the biological parent’s consent is freely given with full understanding of the consequences. The 1989 amendment of Social Services Law § 374 (6) prohibiting dual representation furthers this purpose (see, L 1989, ch 315). It does not follow, however, that every adoption finalized in the era of dual representation must be voided.
In this case, consent was given in open court, following detailed questioning by the Surrogate. As the trial court found, petitioner fully understood the consequences of her consent and no fraud or deceit induced the consent. We therefore hold that the failure of the Surrogate, on this record, under these circumstances and on the state of the then-applicable law, to inform petitioner of her right to counsel of her own choosing, *398 where petitioner stated, in open court that she had her own counsel, does not vitiate an otherwise valid judicially approved consent.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to the Appellate Division for consideration of those issues or applications (including visitation) raised but not considered on appeal or dismissed as academic.