90 N.Y.2d 389 (1997)
683 N.E.2d 746
660 N.Y.S.2d 840
In the Matter of Chaya S., Also Known as Chaya M. A., Respondent,
v.
Frederick Herbert L. et al., Appellants.
Court of Appeals of the State of New York.
Argued May 7, 1997
Decided June 12, 1997.
Miller, Cassidy, Larroca & Lewin, L. L. P. (Nathan Lewin and Mathew S. Nosanchuk, of the District of Columbia Bar, admitted pro hac vice, of counsel), Harold A. Mayerson, New York City, and Randi S. Isaacs for appellants.
Ginsberg, Katsorhis & Fedrizzi, Flushing (Kerry J. Katsorhis of counsel), Barry C. Schneps and Warren S. Hecht for respondent.
Jones, Day, Reavis & Pogue (Beth Heifetz, Daniel H. Bromberg and Maureen M. Carr, of the District of Columbia Bar, admitted pro hac vice, of counsel), for National Council For Adoption, amicus curiae.
Seymour & Scherr (Leslie Scherr, of the District of Columbia Bar, admitted pro hac vice, of counsel), and Kellis, Totaro & Soffer (Sam Totaro, of the Pennsylvania Bar, admitted pro hac vice, of counsel), for American Academy of Adoption Attorneys, amicus curiae.
Chief Judge KAYE and Judges BELLACOSA, LEVINE and WESLEY concur with Judge CIPARICK; Judge TITONE concurs in result in a separate opinion in which Judge SMITH concurs.
*392 CIPARICK, J.
Section 115-b of the Domestic Relations Law provides that a biological parent may execute or acknowledge a consent to a private-placement adoption before a Judge or Surrogate, who must inform the parent of the consequences of giving the consent and must also advise the parent of the right to counsel of his or her own choosing. At issue in this case is whether the failure of the Surrogate to inform petitioner that she was entitled to counsel of her own choice invalidates her consent when petitioner indicated that she had a lawyer and when the Surrogate, in the presence of the lawyer, explained the consequences of her consent and ascertained that the consent was freely and knowingly given. We hold that under the facts and circumstances presented here, the Surrogate's failure to so inform the petitioner did not invalidate her consent and therefore reverse the Appellate Division order.
Petitioner Chaya A. (now known as Chaya S.) and Asher A. were married on August 18, 1985. By November 1985, both parties realized that the marriage was a "big mistake" and petitioner returned to live at home with her parents, respondents Frederick and Sydell L. At the time of separation, petitioner was two months pregnant. Petitioner sought advice from a Rabbi especially knowledgeable about obtaining a Jewish religious divorce, a Get, in difficult circumstances. The Rabbi, in turn, referred petitioner to an attorney, Sheldon Eisenberger, whose law firm Mandel, Weiss, Campise, Eisenberger and Mandel was subsequently retained to represent petitioner in obtaining a civil divorce.
During divorce negotiations Asher declared that he did not want any financial responsibility for the unborn child and *393 requested that petitioner have an abortion. Petitioner would not agree to an abortion. Adoption of the child was discussed and respondents expressed a willingness to adopt their grandchild. Asher agreed that if the child was adopted and he was thereby relieved of any possible future financial responsibility he would, in exchange, give petitioner a Get.
Patricia Mandel, Esq., Eisenberger's partner, negotiated the details of a separation agreement on petitioner's behalf. She met with petitioner several times and had numerous telephone consultations explaining to her the terms of the separation agreement "from the first words to the last," including the legal ramifications of consenting to adoption. Petitioner took an active interest in all aspects of the negotiations and queried Mandel about specific terms of the agreement. The final agreement dated April 1, 1986, provided in pertinent part:
"ARTICLE XVC>"LEGAL REPRESENTATION
"The parties represent to each other that the wife has been represented by MANDEL WEISS CAMPISE EISENBERGER and MANDEL, 11 East 36th Street, New York, New York 10016, and the husband has been represented by NAIMARK & TANNENBAUM, 169-91 137th Avenue, Jamaica, New York, 11434 * * *
"ARTICLE XVIIC>"MAINTENANCE AND CHILD SUPPORT * * *C>"Child Support
"The Wife states that she is pregnant. The parties hereby unconditionally agree that upon the birth of said issue, said issue will be adopted by the parents of the Wife. The parties hereby state that they have considered the matter carefully, have not been subject to duress or pressure of any kind from any person whatsoever, and they irrevocably consent to the future adoption of said issue by the parents of the Wife herein * * *
"ARTICLE XVIIIC>"ADOPTION AND WAIVER
"The parties acknowledge and agree that by signing *394 this Agreement, they have executed and acknowledged their irrevocable consent to the adoption of the issue after the birth of said issue by the parents of the Wife. The Husband's/Wife's consent to the adoption of the issue of the marriage is the primary consideration for the Wife's/Husband's waiver of maintenance, child support and her/his interest in the cash assets of the parties."
Petitioner signed the agreement initialing it in six different places where handwritten corrections were inserted. She received a Get the same day.
The child, now known as Emuna L., was born on June 13, 1986. A petition for adoption was filed on September 15, 1986, on behalf of the adoptive parents by Mandel. Petitioner appeared before the Surrogate in Queens County to execute a judicial consent to the adoption (see, Domestic Relations Law § 115-b [2]). Also present was Mandel who reviewed the adoption documents with petitioner. The Surrogate asked petitioner what she would do if the natural father refused to give his consent. Petitioner responded, "I would consult with my lawyer and see what options we have." Prior to obtaining petitioner's written consent, the Surrogate explained to her the consequences of executing a consent, pointing out that although the adoptive parents were also petitioner's parents and that she lived with them in the same household, she would have "absolutely no say or control over the child's education, future, health or anything else." Petitioner acknowledged that she understood and that her consent was voluntary.
Asher, accompanied by his counsel, appeared before the same Surrogate on March 26, 1987. Upon questioning, he informed the Surrogate that he had consulted with his attorney, that he understood the import of the papers and that he was executing the consent of his own free will. The order of adoption became final on July 9, 1987. Mandel represented petitioner in her divorce which became final on August 12, 1988. The divorce incorporated the terms of the Separation Agreement executed on April 1, 1986.
Petitioner remarried and for a time respondents allowed petitioner and her new husband to have visitation with Emuna. However, respondents subsequently cut off petitioner's access to the child, prompting petitioner to seek nullification of the adoption on the grounds that her consent had been procured by fraud and that she had not been represented by independent counsel.
*395 Petitioner applied for a temporary order of visitation pending the outcome of the petition to vacate the adoption which was denied. The trial court subsequently denied petitioner's motion for summary judgment concluding that the transcript of petitioner's appearance before the Surrogate who accepted the consent "indicate[d] that the Surrogate advised the natural mother of the consequences of her act" and that petitioner made "statements * * * that would cause the Court to reasonably infer that she was represented by counsel, whether it be the attorney present in the room at that time or some other attorney."
Following a nonjury trial the court found that petitioner had retained the firm of Mandel, Weiss, Campise Eisenberger and Mandel "to represent her in connection with obtaining of a Get, the matrimonial proceedings and all incidental and related matters" and that, consequently, she was represented by counsel during the adoption proceeding. In spite of Mandel's testimony that she represented the adoptive parents, the trial court concluded that Mandel did not provide legal counsel to them but was listed as their attorney on the petition for adoption merely as an "accommodation" to them. Finding petitioner's testimony of fraud and duress "inconsistent, incredible and totally unworthy of belief," the trial court dismissed the petition to void the adoption.
The Appellate Division reversed on the ground that the Surrogate failed to advise petitioner of her right to counsel of her own choosing in accordance with Domestic Relations Law § 115-b (2) (b). Disagreeing with the trial court, the Appellate Division concluded that petitioner was not represented by counsel and that Mandel in fact represented the adoptive parents. Specifically, the Appellate Division noted that Mandel's fee was paid by the adoptive parents, she was listed as attorney on the adoption petition, had signed an affidavit attesting to her representation of the adoptive parents and had testified at trial to the same effect.
Pursuant to section 115-b (2) (a) of the Domestic Relations Law, consent of a biological parent to a private placement adoption may be executed before a Judge or Surrogate with jurisdiction over adoptions. The governing statute provides: "At the time that a parent appears before a judge or surrogate to execute or acknowledge a consent to adoption, the judge or surrogate shall inform such parent of the consequences of such act pursuant to the provisions of this section, including informing such parent of the right to be represented by legal counsel *396 of the parent's own choosing" (Domestic Relations Law § 115-b [2] [b]).
Section 115-b, as originally enacted (see, L 1972, ch 639, § 3), was designed to "introduce certainty and finality by limiting a parent's right to revoke consent, with the stated intention of balancing the rights of surrendering parents, adoptive parents and children" (Matter of Sarah K., 66 N.Y.2d 223, 234, cert denied sub nom. Kosher v Stamatis, 475 US 1108). Prior to a 1986 amendment of the statute, the court was required to explain to the biological parents the consequences of an irrevocable consent to adoption and to ensure that their consent was knowing and voluntary (see, L 1972, ch 639, § 3; Matter of Sarah K., supra, 66 NY2d, at 239).
In 1986, Domestic Relations Law § 115-b was amended to further promote the statutory goal of finality in adoptions by providing additional safeguards "to insure voluntariness and knowing consent" (Mem of Off of Ct Admin [recommending approval of L 1986, ch 817], 1986 McKinney's Session Laws of NY, at 3394). Pursuant to the 1986 amendment, in addition to informing the biological parent of the right to counsel of his or her own choosing, the court is also required to inform the parent of the availability of counseling services and the right of indigent persons to the assignment of counsel in cases involving a custody dispute or a contested proceeding to revoke consent to an adoption (Domestic Relations Law § 115-b [2] [b], as amended by L 1986, ch 817). The amendment thus established a series of checks to ensure that birth parents fully comprehend the permanent and profound nature of their consent to adoption.
In the instant case, it is undisputed that the Surrogate did not inform petitioner that she had a right to counsel of her own choosing. The parties dispute, however, whether she was in fact already represented by counsel as she stood with a lawyer before the court. Respondents contend, and the trial court agreed, that petitioner was represented by counsel. Petitioner counters, as found by the Appellate Division, that Mandel in fact represented only the adoptive parents and that petitioner was not represented by counsel.
We conclude that the trial court's determination that petitioner retained counsel "to represent her in connection with the obtaining a Get, the matrimonial proceedings and all incidental and the related matters" including the adoption more nearly comports with the weight of the evidence (see, *397 Loughry v Lincoln First Bank, 67 N.Y.2d 369, 380). As found by the trial court, the adoption proceeding was an intrinsic part of the matrimonial and Get negotiations and proceedings. Mandel negotiated the separation agreement on petitioner's behalf and "spent a lot of time explaining" to petitioner the legal ramifications of the agreement. She reviewed every aspect of the agreement "from the first words to the last" explaining to petitioner that it entailed giving up her child for adoption.
Although Mandel nominally filed the adoption petition on behalf of the adoptive parents, the record reflects that her discussions were with petitioner. On the day of the judicial consent hearing, she reviewed and explained the adoption papers to petitioner. Significantly, when the Surrogate asked petitioner what she would do if her husband did not consent, she responded "I would consult with my lawyer and see what options we have." Petitioner's statement clearly indicated to the Surrogate that she already had counsel at the adoption proceeding.
At the time petitioner appeared before the Surrogate, an attorney's dual representation of the biological parent and the adoptive parent was permissible (see, Carrieri, Practice Commentaries, McKinney's Cons Laws of NY, Book 52A, Social Services Law § 374 [6], at 451). Hence, Mandel's appearance as attorney for the adoptive parents did not preclude her representation of petitioner.
Petitioner argues that the participation of Mandel "tainted" her consent. On the record before us, we disagree. Of course, separate representation of biological and adoptive parents avoids any potential conflict of interest on the part of an attorney and provides enhanced assurance that the biological parent's consent is freely given with full understanding of the consequences. The 1989 amendment of Social Services Law § 374 (6) prohibiting dual representation furthers this purpose (see, L 1989, ch 315). It does not follow, however, that every adoption finalized in the era of dual representation must be voided.
In this case, consent was given in open court, following detailed questioning by the Surrogate. As the trial court found, petitioner fully understood the consequences of her consent and no fraud or deceit induced the consent. We therefore hold that the failure of the Surrogate, on this record, under these circumstances and on the state of the then-applicable law, to inform petitioner of her right to counsel of her own choosing, *398 where petitioner stated in open court that she had her own counsel, does not vitiate an otherwise valid judicially approved consent.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to the Appellate Division for consideration of those issues or applications (including visitation) raised but not considered on appeal or dismissed as academic.
TITONE, J. (concurring).
Although I agree that petitioner's consent to the adoption was not vitiated by the Queens County Surrogate's failure to advise her of her right to counsel pursuant to Domestic Relations Law § 115-b (2) (b), my analysis of the facts and law differs significantly from the approach that the Court has taken. Accordingly, I write separately to express my own views on the proper resolution of the issues.
Contrary to the majority's conclusion, I conclude that the weight of the evidence overwhelmingly supports the Appellate Division's factual conclusion that petitioner was not represented when she appeared before the Queens County Surrogate to give her consent to the adoption of her child.
The inference that she was represented in the adoption proceeding rests largely on her representation by Patricia Mandel in the divorce and Get proceedings (see, majority opn, at 397). Although it is true that petitioner received advice from Mandel with respect to her separation agreement and it is also true that "the adoption proceeding was an intrinsic part of the matrimonial and Get negotiations and proceedings" (id.), it does not necessarily follow that Mandel's representation of petitioner in the matrimonial matter continued into the adoption consent proceeding itself. Indeed, any logical connection that might otherwise have existed between the attorney's activities in the matrimonial and adoption proceedings is attenuated by the fact that the individuals who paid Mandel to represent petitioner's interests in the matrimonial and Get proceedings  petitioner's parents  were themselves interested parties in the adoption proceeding. Although it is possible under the then-existing rules that Mandel represented both sides (see, Carrieri, Practice Commentaries, McKinney's Cons Laws of NY, Book 52A, Social Services Law § 374, at 451; cf., Social Services Law § 374 [6], as amended by L 1989, ch 315 [prohibiting dual representation]), there was no real proof that that was the case here.
The morsel of proof on which the majority relies, i.e., petitioner's statement that she "would consult with [her] *399 lawyer" if the biological father refused his consent is a weak predicate, since it was a hypothetical remark made in response to a hypothetical question. Moreover, even assuming that petitioner was referring specifically to Mandel when she made the remark, petitioner's understanding of the relationship between that attorney and herself can hardly be regarded as dispositive in view of Mandel's own statements at the hearing that she did not represent petitioner in the adoption proceeding. Indeed, the fact that Mandel did not view herself as petitioner's attorney would seem to all but preclude a finding that Mandel had represented petitioner, particularly in view of the additional facts that Mandel's firm was listed in the court files as the attorney for the adoptive parents and that Mandel had submitted an affidavit in the adoption proceeding indicating that she was retained by the adoptive parents. Mandel's office practices in connection with the matrimonial and adoption proceedings are also telling. In the matrimonial proceeding, the Mandel firm sent copies of its correspondences to petitioner; however, in the adoption proceeding, copies of the firm's correspondences were sent only to the adoptive parents.
When the substantial evidence that Mandel represented only the adoptive parents in the adoption proceedings is arrayed against the weak and speculative evidence that she also represented petitioner, the conclusion is inescapable that the Appellate Division's factual determination was the one that "more nearly comports with the weight of the evidence" (Loughry v Lincoln First Bank, 67 N.Y.2d 369, 380). Thus, I would adopt the view that petitioner was not represented at the consent proceeding, and I am, consequently, led to consider the more difficult question of whether the resulting Order of Adoption was invalid because of the Surrogate's failure to admonish petitioner of her right to counsel of choice in the proceeding.[*]
The key to resolving that question lies in the legislative goal underlying the 1986 amendment to Domestic Relations Law § 115-b (2), which required for the first time that the biological parent be informed of certain of his or her rights in connection with the adoption proceedings (see, L 1986, ch 817). As the majority *400 has accurately observed, the purpose of this amendment was "to insure voluntariness and knowing consent" (Mem of Off of Ct Admin, reprinted in 1986 McKinney's Session Laws of NY, at 3394).
This goal is unquestionably a laudable and important one. Moreover, although no particular catechism is prescribed, the statutory requirements are clearly mandatory and must be satisfied wherever the admonitions are pertinent. However, since the mandated recitation may not always be necessary to achieve the statutory aim, we need not conclude that a failure to follow the statutory mandate should always invalidate the adoption proceeding itself.
The overriding goal of the procedure contemplated by section 115-b was to "introduce certainty and finality * * * with the stated intention of balancing the rights of surrendering parents, adoptive parents and children" (Matter of Sarah K., 66 N.Y.2d 223, 234, cert denied sub nom. Kosher v Stamatis, 475 US 1108). That overriding goal would not be served by an interpretation of section 115-b (2) (b) that requires the invalidation of an otherwise valid surrender solely because of a technical statutory violation. Such an approach would elevate form  i.e., a formal recital  over substance  i.e., the critical value of finality  without necessarily advancing the concomitant goal of assuring informed and voluntary consent.
In my view, the better approach would be one that looks to all of the relevant circumstances and, in particular, whether the biological parent's decision was an informed and voluntary one (cf., People v Harris, 61 N.Y.2d 9). Where the record reveals that the biological parent fully understood his or her rights and agreed to the surrender of his or her own free will, no useful juridical or social purpose would be served by undoing the adoption order and disrupting the child's new family ties because of a technical flaw in the surrender allocution.
As applied to this case, the foregoing approach would require that the Appellate Division order be reversed, since it rests on the erroneous assumption that petitioner's consent to the adoption was automatically invalid solely because of the Surrogate's failure to advise her of her right to counsel. It would then remain for the Appellate Division to review the facts and to determine for itself whether there is any factual merit to petitioner's contentions that her surrender was the product of coercion and/or fraud. On the basis of that rationale, I concur in the majority's decision to reverse and remit to the intermediate appellate court.
Order reversed, with costs, and matter remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.
NOTES
[*] Were I to reach the contrary factual conclusion, as the majority has, I would have no difficulty in holding that the Surrogate's omission did not invalidate the adoption. Indeed, it seems too obvious to require extended discussion that a right-to-counsel admonition is superfluous when offered to a represented party and that the failure to give such an admonition under those circumstances is not a legally significant omission.