[717 NYS2d 47]

Felipe Acosta, Appellant, v Loews Corporation et al., Respondents, et al., Defendants.

First Department, November 28, 2000

**APPEARANCES OF COUNSEL**

*Lizabeth Schalet* and *John Ware Upton* of counsel (*Robert D. Lipman* on the brief; *Lipman & Plesur, L. L. P.,* attorneys), for appellant.

*Edward Cerasia, II,* and *Paul H. Galligan* of counsel (*Seyfarth, Shaw, Fairweather & Geraldson,* attorneys), for respondents.

### OPINION OF THE COURT

TOM, J.

Plaintiff was a pantry cook in the kitchen of defendant Regency Hotel, commencing in 1980. Defendant Loews owns the Regency Hotel. Defendant Lee was the night manager. Various other individual defendants were fellow employees. The gravamen of the complaint is that from 1985 to August 1997, during plaintiff's employment at the Regency, these co-workers and managerial employees routinely harassed, abused and assaulted him because of his sexual orientation. Plaintiff alleges that he was constantly called names such as "homo," "faggot," and "marricone," asked about his sexual practices and ridiculed about his sexual preference in front of his co-workers. Male co-workers allegedly exposed their genitals to plaintiff while others pushed and touched plaintiff all over his body. Plaintiff allegedly had his pants forcefully pulled down in the locker room on more than one occasion while another co-worker exposed his genitals to plaintiff. One supervisor allegedly pretended to want to shake plaintiff's hand, but would pull his hand back saying "don't touch me, I don't want to get AIDS" and on several occasions shoved a spoon up against plaintiff's buttock. The supervisor would announce over the microphone, "C'mon homo, move."

Plaintiff contends that although some of this conduct occurred in the presence of managerial personnel, they failed to step in. His claims against the corporate defendants arise from their acquiescence in these acts of assault and harassment over the 12-year period, during which he alleges they had knowledge of the conduct, amounting to a ratification of the acts of the individual employees. Moreover, after plaintiff's union representative conducted meetings with management in 1987 and 1993 to address the alleged harassment, the Regency failed to take action. Plaintiff alleges that he suffered a nervous breakdown in 1997 as a result of the harassment, and was hospitalized, but, again, the Regency failed to adequately remedy his work environment.

Plaintiff commenced the instant action on July 31, 1998, seeking redress under the New York City Human Rights Law (Administrative Code of City of NY § 8-101 *et seq.*), the New York State Human Rights Law (Executive Law § 290 *et seq.*),

and on various intentional tort theories. Complicating this case is the complaint filed earlier by plaintiff with the New York City Human Rights Commission in September 1997, alleging sexual orientation discrimination, the City's eventual dismissal of that complaint, and the procedural effect it has, or does not have, on the present civil litigation. The motion court found that plaintiff's election of remedies by filing a prior complaint with the City Human Rights Commission required dismissal of the present claims advanced in the second, third, fifth and seventh causes of action grounded in the New York City Human Rights Law. We modify and reinstate those claims.

If a civil action is an available remedy, there is a three-year Statute of Limitations for administrative claims which, however, may be tolled during the pendency of the administrative complaint (Administrative Code § 8-502 [d]). However, the motion court found the assault and battery claims were unrelated to these Human Rights Law claims and as such were unaffected by the tolling provisions afforded to claims advanced initially as administrative violations under the Human Rights Law (Administrative Code § 8-502 [d]). Since the Statute of Limitations was thus not tolled, the court dismissed the eighth cause of action, sounding in assault and battery, which has a one-year Statute of Limitations, to the extent of incidents occurring prior to July 31, 1997. Our present ruling leaves that part of the order undisturbed. The motion court found the intentional infliction of emotional distress claim to constitute a continuing violation not similarly barred by the Statute of Limitations, and we agree with that result. On the basis that the intentional torts could not be imputed on a theory of respondeat superior to either Loews or the Regency under these facts, the court dismissed against those defendants the eighth and ninth causes of action alleging that the employers tolerated the offensive conduct. However, insofar as plaintiff has set forth sufficient allegations to establish the complicity of these defendants in the conduct of their employees, we also reinstate these claims to the extent not barred by the Statute of Limitations.

This appeal turns initially on the issue of whether the election of remedies doctrine applies to bar the plenary action. As noted, plaintiff, *pro se*, filed his administrative complaint, alleging violations of the City's Human Rights Law (Administrative Code, tit 8, §§ 8-101—8-131), with the New York City Commission on Human Rights in September 1997. The administrative complaint alleged that defendants had engaged

in a pattern of discrimination against him arising from his sexual orientation.

Defendants answered and the Commission commenced an investigation. During this time period, plaintiff retained counsel. On July 17, 1998, the Commission dismissed the complaint for "administrative convenience" (ACD) pursuant to Administrative Code § 8-113 (a) (5). Plaintiff thereafter filed the present plenary action.

The legislative history of the City's 1991 Human Rights Law indicates that it was a response to numerous bias incidents in the 1980's. It was initially intended to address racial discrimination, including, among a broad range of proscribed activities, harassment and tortious assaultive conduct. Insofar as is presently relevant, the Human Rights Law also provided a remedy by victims of harassment against co-workers. Those protections were subsequently extended, by amendment to the Administrative Code, to victims of sexual orientation bias; hence the basis for plaintiff's administrative complaint.

Generally, discriminatory harassment on the basis of, *inter alia*, sexual orientation is unlawful in New York City, and civil penalties may be imposed for violations (Administrative Code § 8-603). Administrative Code § 8-502 (a) provides that "[e]xcept as otherwise provided by law, any person claiming to be aggrieved by an unlawful discriminatory practice * * * or by an act of discriminatory harassment or violence * * * shall have a cause of action in any court of competent jurisdiction for damages, including punitive damages, and for injunctive relief and such other remedies as may be appropriate, *unless such person has filed a complaint with the city commission on human rights or with the state division of human rights.*" (Emphasis supplied.) This section provides for an exclusive election of remedies (*see, Marine Midland Bank v New York State Div. of Human Rights*, 75 NY2d 240, decided under Executive Law § 297). Section 8-502 (b), though, provides a loophole, in the event that the administrative complaint is, under specified circumstances, dismissed by the agency on grounds not going to the merits.

In the present case, where the complainant seeks monetary damages and the dismissal was by the City Commission, section 8-502 (b) directs us to section 8-113 (a), (b) and (c) as the exclusive grounds for an administrative dismissal allowing for revival of the complainant's right to pursue a civil action. The administrative complaint also may be withdrawn without prejudice to further civil action by the Commission or the New

York City Corporation Counsel on the complainant's behalf (§ 8-112) (an avenue of relief not pursued here) or may be dismissed by the Commission for, *inter alia*, "administrative convenience" (§ 8-113 [a], [b]), which, citing to section 8-113 (a) (5), the Commission did here.

Under the State's Human Rights Law, the Division's dismissal for administrative convenience (Executive Law § 297) is an exercise of its " 'unreviewable discretion,' " manifesting the Legislature's goal of streamlining administration of the Division's affairs (*Marine Midland Bank v New York State Div. of Human Rights, supra*, at 245). The analogy between Executive Law § 297 and the City's Administrative Code provisions is evident. The exception to the agency's discretionary authority, under State law, is when the dismissal is " 'purely arbitrary,' " that is, that the ACD otherwise contravenes codified law or the Constitution (*Marine Midland Bank v New York State Div. of Human Rights, supra*, at 246; *Matter of Pan Am. World Airways v New York State Human Rights Appeal Bd.*, . 61 NY2d 542; *Legg v Eastman Kodak Co.*, 248 AD2d 936). Thus, the ACD remains immune from judicial review, unless it clearly violates the law.

At the outset, then, we have recognized that courts enjoy jurisdiction at least to the extent of determining if the ACD was purely arbitrary (*Eastman Chem. Prods. v New York State Div. of Human Rights*, 162 AD2d 157). By way of example, the agency's issuance of an ACD of administrative claims that were barred by the Executive Law's one-year Statute of Limitations, which would allow complainant to commence timely civil claims in a judicial proceeding, would be arbitrary. For a court to uphold such an ACD would render meaningless the Executive Law's Statute of Limitations as well as the statutory election of remedies (*Marine Midland Bank v New York State Div. of Human Rights, supra*, at 246). When a complainant filed an administrative complaint, then filed a Supreme Court complaint prior to issuance of an ACD, mandating dismissal of the Supreme Court action, the agency acted arbitrarily when it subsequently issued an ACD solely to forestall dismissal of the complainant's Supreme Court action (*Legg v Eastman Kodak Co., supra*). But the facts of the present case do not present such an obstruction of the statute. When the complaint is properly dismissed for administrative convenience, the complainant then retains the right to bring an action in State court as if the administrative complaint had never been filed (*cf., Marine Midland Bank v New York State Div. of Human*

*Rights, supra*). Therefore, if the analogy is applicable we would have to find pure arbitrariness in order for us to basically invalidate the ACD and dismiss the present judicial proceeding.

Ordinarily, an ACD dismissal must serve agency convenience rather than the convenience of the complainant in order to allow commencement of a civil action (*Marine Midland Bank v New York State Div. of Human Rights, supra*). Administrative Code § 8-113 (a) (5), allows for dismissal when the "prosecution of the complaint will not serve the public interest." Specifically, the July 17, 1998 notice of administrative closure in this case specifies that "prosecution of the complaint will not serve the public interest because complainant will be pursuing the same action in state court." The motion court found this reasoning to be arbitrary, constituting an end run around the election of remedies provision in section 8-502.

The important question for us, then, is whether the Commission's dismissal contradicted this provision. In part, this involves the question whether there is a valid public interest being served in this case. The usual standard of judicial deference to administrative interpretation of a particular term, such as "public interest," applies unless a particular construction placed upon a relevant term flaunts clear law, and hence is arbitrary.

The State Division of Human Rights has been recognized to have a public interest in "conserving its scarce resources and in alleviating its overwhelming caseload," especially when the complainant has an alternative forum (*Matter of Arcata Graphics Co. v New York State Div. of Human Rights*, 175 AD2d 663, 663-664, *lv denied* 78 NY2d 863; *accord, Eastman Chem. Prods. v New York State Div. of Human Rights, supra; accord, Columbian Rope Co. v New York State Div. of Human Rights*, 174 AD2d 1033). Cases, nevertheless, in which an ACD was annulled on other grounds, have held that an ACD can be maintained on the ground that State claims shall be able to proceed to Federal court to avoid duplicative proceedings and to conserve scarce State resources (*cf., Kordich v Povill*, 244 AD2d 112; *Matter of AMR Servs. Corp. v New York State Div. of Human Rights*, 214 AD2d 665). The stated purpose of the 1997 amendment to Executive Law § 297 was to allow the agency to dismiss an administrative complaint for the very purpose of allowing the complainant to annul his or her election of remedies and pursue an action in State court (*cf., Kordich v Povill, supra*, at 116). This issue has usually arisen

when a complainant seeks relief in a Federal forum. However, when the goal is to preserve agency resources, whether the alternative forum might be Federal rather than State court should not require a different result (*cf., Kordich v Povill, id.* [addressing 1997 amendment to Executive Law allowing ACD so that claims could be brought in either Federal or State court]).

In the present case, the City Commission has limited jurisdiction extending only to claims arising under the Administrative Code, whereas Supreme Court has exclusive jurisdiction over the pendent civil claims arising under State law. Therefore, it was proper to dismiss the administrative claims, thereby conserving City resources, and allow joinder with the State law claims in State court.

Hence, we are guided by these decisions that found the ACD to have been properly issued when the agency's goal was to preserve scarce resources by allowing the complainant to join administrative claims with pendent civil claims. In the present case, these civil claims include assault and battery and intentional infliction of emotional distress, asserted against the individual defendants as well as against corporate defendants. These may be joined with the Human Rights Law claims in the State civil action, but not before the Commission. In this sense, the Commission would have been expending its scarce resources to resolve a limited class of claims that more comprehensively could have been addressed by a court hearing the civil claims. On this basis, we modify to reinstate the Administrative Code claims and, giving effect to the tolling provisions of section 8-502 (d), to the civil claims that would have been timely when the administrative proceeding commenced.

As noted, we also reinstate the claims against the corporate defendants. Employers may be held liable for tortious conduct by employees when the employer's complicity can be established (*cf., Loughry v Lincoln First Bank*, 67 NY2d 369, 373). Among the factors we have considered in determining whether an employee's tort was sufficiently within the scope of his employment to render his employer liable are the connection between the time, place and occasion for the act; the history of the relationship between the employer and employees—here the managers; and whether the act was one reasonably anticipated. How to apply these factors involves a factual review (*Dykes v McRoberts Protective Agency*, 256 AD2d 2). For these purposes, we must assume the truth of the allegations in the complaint (*Cron v Hargro Fabrics*, 91 NY2d 362, 366). In

view of the lengthy history of the alleged abuse here, the record made of it when it was reported by plaintiff, and the alleged complicity of managerial personnel, it cannot be said that the employer should be exonerated as a matter of law at this stage of the proceedings. Rather, the pleadings set forth sufficient allegations to require a jury trial.

Accordingly, the order of the Supreme Court, New York County (Leland DeGrasse, J.), entered April 2, 1999, which granted the motion to dismiss the complaint against defendants-respondents to the extent of dismissing plaintiff's claims based on violations of the City Human Rights Law set forth in the second, third, fifth and seventh causes of action, the assault and battery claims set forth in the eighth cause of action relating to incidents occurring prior to July 31, 1997 as time barred, and the intentional tort claims set forth in the eighth and ninth causes of action asserted against defendants Loews and Regency for failure to state a cause of action, should be modified, on the law, to reinstate all the Administrative Code claims set forth in the second, third, fifth and seventh causes of action, the assault and battery claims against Loews and Regency in the eighth cause of action as to conduct occurring prior to July 31, 1997, and the intentional infliction of emotional distress claim against Loews and Regency in the ninth cause of action, and otherwise affirmed, without costs.

WILLIAMS, J. P., MAZZARELLI and BUCKLEY, JJ., concur.

Order, Supreme Court, New York County, entered April 2, 1999, modified, on the law, to reinstate all the Administrative Code claims set forth in the second, third, fifth and seventh causes of action, the assault and battery claims against Loews and Regency in the eighth cause of action as to conduct occurring prior to July 31, 1997, and the intentional infliction of emotional distress claim against Loews and Regency in the ninth cause of action, and otherwise affirmed, without costs.