Titone, J.
(concurring). Although I agree that petitioner’s consent to the adoption was not vitiated by the Queens County Surrogate’s failure to advise her of her right to counsel pursuant to Domestic Relations Law § 115-b (2) (b), my analysis of the facts and law differs significantly from the approach that the Court has taken. Accordingly, I write separately to express my own views on the proper resolution of the issues.
Contrary to the majority’s conclusion, I conclude that the weight of the evidence overwhelmingly supports the Appellate Division’s factual conclusion that petitioner was not represented when she appeared before the Queens County Surrogate to give her consent to the adoption of her child.
The inference that she was represented in the adoption proceeding rests largely on her representation by Patricia Mandel in the divorce and Get proceedings (see, majority opn, at 397). Although it is true that petitioner received advice from Mandel with respect to her separation agreement and it is also true that "the adoption proceeding was an intrinsic part of the matrimonial and Get negotiations and proceedings” (id.), it does not necessarily follow that Mandel’s representation of petitioner in the matrimonial matter continued into the adoption consent proceeding itself. Indeed, any logical connection that might otherwise have existed between the attorney’s activities in the matrimonial and adoption proceedings is attenuated by the fact that the individuals who paid Mandel to represent petitioner’s interests in the matrimonial and Get proceedings — petitioner’s parents — were themselves interested parties in the adoption proceeding. Although it is possible under the then-existing rules that Mandel represented both sides (see, Carrieri, Practice Commentaries, McKinney’s Cons Laws of NY, Book 52A, Social Services Law § 374, at 451; cf., Social Services Law § 374 [6], as amended by L 1989, ch 315 [prohibiting dual representation]), there was no real proof that that was the case here.
The morsel of proof on which the majority relies, i.e., petitioner’s statement that she "would consult with [her] *399 lawyer” if the biological father refused his consent is a weak predicate, since it was a hypothetical remark made in response to a hypothetical question. Moreover, even assuming that petitioner was referring specifically to Handel when she made the remark, petitioner’s understanding of the relationship between that attorney and herself can hardly be regarded as dis-positive in view of Handel’s own statements at the hearing that she did not represent petitioner in the adoption proceeding. Indeed, the fact that Handel did not view herself as petitioner’s attorney would seem to all but preclude a finding that Handel had represented petitioner, particularly in view of the additional facts that Handel’s firm was listed in the court files as the attorney for the adoptive parents and that Handel had submitted an affidavit in the adoption proceeding indicating that she was retained by the adoptive parents. Handel’s office practices in connection with the matrimonial and adoption proceedings are also telling. In the matrimonial proceeding, the Handel firm sent copies of its correspondences to petitioner; however, in the adoption proceeding, copies of the firm’s correspondences were sent only to the adoptive parents.
When the substantial evidence that Handel represented only the adoptive parents in the adoption proceedings is arrayed against the weak and speculative evidence that she also represented petitioner, the conclusion is inescapable that the Appellate Division’s factual determination was the one that "more nearly comports with the weight of the evidence” (Loughry v Lincoln First Bank, 67 NY2d 369, 380). Thus, I would adopt the view that petitioner was not represented at the consent proceeding, and I am, consequently, led to consider the more difficult question of whether the resulting Order of Adoption was invalid because of the Surrogate’s failure to admonish petitioner of her right to counsel of choice in the proceeding.*
The key to resolving that question lies in the legislative goal underlying the 1986 amendment to Domestic Relations Law § 115-b (2), which required for the first time that the biological parent be informed of certain of his or her rights in connection with the adoption proceedings (see, L 1986, ch 817). As the ma *400 jority has accurately observed, the purpose of this amendment was "to insure voluntariness and knowing consent” (Mem of Off of Ct Admin, reprinted in 1986 McKinney’s Session Laws of NY, at 3394).
This goal is unquestionably a laudable and important one. Moreover, although no particular catechism is prescribed, the statutory requirements are clearly mandatory and must be satisfied wherever the admonitions are pertinent. However, since the mandated recitation may not always be necessary to achieve the statutory aim, we need not conclude that a failure to follow the statutory mandate should always invalidate the adoption proceeding itself.
The overriding goal of the procedure contemplated by section 115-b was to "introduce certainty and finality * * * with the stated intention of balancing the rights of surrendering parents, adoptive parents and children” (Matter of Sarah K., 66 NY2d 223, 234, cert denied sub nom. Kosher v Stamatis, 475 US 1108). That overriding goal would not be served by an interpretation of section 115-b (2) (b) that requires the invalidation of an otherwise valid surrender solely because of a technical statutory violation. Such an approach would elevate form— i.e., a formal recital — over substance — i.e., the critical value of finality — without necessarily advancing the concomitant goal of assuring informed and voluntary consent.
In my view, the better approach would be one that looks to all of the relevant circumstances and, in particular, whether the biological parent’s decision was an informed and voluntary one (cf., People v Harris, 61 NY2d 9). Where the record reveals that the biological parent fully understood his or her rights and agreed to the surrender of his or her own free will, no useful juridical or social purpose would be served by undoing the adoption order and disrupting the child’s new family ties because of a technical flaw in the surrender allocution.
As applied to this case, the foregoing approach would require that the Appellate Division order be reversed, since it rests on the erroneous assumption that petitioner’s consent to the adoption was automatically invalid solely because of the Surrogate’s failure to advise her of her right to counsel. It would then remain for the Appellate Division to review the facts and to determine for itself whether there is any factual merit to petitioner’s contentions that her surrender was the product of coercion and/or fraud. On the basis of that rationale, I concur in the majority’s decision to reverse and remit to the intermediate appellate court.
*401 Chief Judge Kaye and Judges Bellacosa, Levine and Wesley concur with Judge Ciparick; Judge Titone concurs in result in a separate opinion in which Judge Smith concurs.
Order reversed, with costs, and matter remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.

 Were I to reach the contrary factual conclusion, as the majority has, I would have no difficulty in holding that the Surrogate’s omission did not invalidate the adoption. Indeed, it seems too obvious to require extended discussion that a right-to-counsel admonition is superfluous when offered to a represented party and that the failure to give such an admonition under those circumstances is not a legally significant omission.