■ ISHMEL PEGUERO et al., Respondents, v 601 REALTY CORP. et al., Appellants. [873 NYS2d 17]—

Amended judgment, Supreme Court, New York County (Sherry Klein Heitler, J.), entered June 27, 2007, after a jury verdict and stipulated reduction, apportioning fault 75% against defendant 601 Realty Corp. and 25% against defendant Jeffrey Farkas, and awarding plaintiffs $4,235,464.76, modified, on the facts and in the exercise of discretion, that portion of the judgment imposing personal liability on defendant Jeffrey Farkas is vacated and the matter remanded for a new trial on the issue of his liability, the awards for future pain and suffering as to both plaintiffs vacated and the matter remanded for a new trial as to those damages only, and otherwise affirmed, without costs, unless plaintiffs stipulate, within 20 days of service of a copy of this order, to accept reduced awards for future pain and suffering of $1,000,000 for plaintiff Ishmel Peguero and $750,000 for plaintiff Emmanuel Peguero, and the entry of an amended judgment in accordance therewith. Appeal from order, same court and Justice, entered October 5, 2006, which partially granted defendants' posttrial motion to set aside the verdict, unanimously dismissed, without costs, as subsumed in the appeal from the amended judgment. Appeal from order, same court and Justice, entered April 11, 2007, which denied defendants' motion to reargue the October 5, 2006 order, unanimously dismissed, without costs.

The infant plaintiffs Ishmel and Emmanuel Peguero are brothers who lived with their mother in a building owned by defendant 601 Realty Corp. (the Corporation). Defendant Jeffrey Farkas was a 50% shareholder and president of the Corporation and defendant Sidney Farkas was the managing agent of the building. Plaintiffs commenced this action seeking damages for personal injuries they sustained as a result of their exposure to lead paint in the apartment they occupied in the building. Their complaint, as amplified by their bill of particulars, alleged that defendants (1) knew both that the infant plaintiffs resided in the apartment and that the apartment contained hazardous lead paint to which plaintiffs were being exposed, and (2) negligently failed to abate the hazardous lead paint conditions.

In defendants' answer, Jeffrey Farkas asserted as an affirmative defense that he was acting on behalf of the Corporation and thus could not be held personally liable.

At trial, Jeffrey Farkas moved at the close of plaintiffs' proof to dismiss the action as against him on the ground that, with respect to his involvement with the building, he acted on behalf of the Corporation and could not be held personally liable for its negligence. Supreme Court reserved decision on that motion, which Jeffrey Farkas renewed after the close of defendants' proof. While Supreme Court did not expressly rule on Jeffrey Farkas' renewed motion to dismiss the action as against him, it did so implicitly by submitting the issue of whether he was negligent to the jury.

The jury returned a verdict in favor of plaintiffs against the Corporation and Jeffrey Farkas, apportioning 75% of the liability to the Corporation and 25% to Jeffrey Farkas; the jury also determined that Sidney Farkas was not negligent. The jury awarded Ishmel $350,000 for past pain and suffering and $3,000,000 for future pain and suffering, and Emmanuel $250,000 for past pain and suffering and $2,500,000 for future pain and suffering. Supreme Court partially granted defendants' posttrial motion to set aside the verdict, directing a new trial on the issue of damages unless plaintiffs stipulated to reduce the awards for Ishmel to $200,000 for past pain and suffering and $2,000,000 for future pain and suffering, and for Emmanuel to $100,000 for past pain and suffering and $1,000,000 for future pain and suffering. Plaintiffs so stipulated and an amended judgment was entered. Defendants' appeal from, among other things, the amended judgment ensued.

Jeffrey Farkas asserts that the court erred in submitting the issue of his negligence to the jury and that it should have dismissed the complaint as against him because he acted in his capacity as an officer of the Corporation and thus could not be held personally liable. Even assuming that Jeffrey Farkas is correct that he was acting solely in his capacity as an officer of the Corporation, he would not be entitled to dismissal of the complaint as against him on that ground. That he acted solely in his capacity as an officer of the Corporation is not a sufficient ground for dismissal. Rather, "a corporate officer who participates in the commission of a tort may be held individually liable, *regardless of whether the officer acted on behalf of the corporation in the course of official duties* and regardless of whether the corporate veil is pierced" (*Espinosa v Rand*, 24 AD3d 102, 102 [2005] [emphasis added, internal quotation marks omitted]; *see W. Joseph McPhillips, Inc. v Ellis*, 278 AD2d

682 [2000]). The "commission of a tort" doctrine permits personal liability to be imposed on a corporate officer for misfeasance or malfeasance, i.e., an affirmative tortious act; personal liability cannot be imposed on a corporate officer for nonfeasance, i.e., a failure to act (*Michaels v Lispenard Holding Corp.*, 11 AD2d 12, 14 [1960]; *see MLM LLC v Karamouzis*, 2 AD3d 161 [2003]).

Jeffrey Farkas, who bore the burden of proof on his affirmative defense that he was not personally liable because he acted as an officer of the Corporation (*see generally Brignoli v Balch, Hardy & Scheinman*, 178 AD2d 290, 290 [1991]), did not assert before Supreme Court that his alleged negligence consisted merely of nonfeasance and instead argued only inaccurately and more generally that personal liability could not be imposed upon him because he acted in his capacity as an officer of the Corporation (*see 220-52 Assoc. v Edelman*, 18 AD3d 313, 315 [2005] [for argument to be preserved for appellate review it must have been fully articulated before the court of original jurisdiction]; *see also Robillard v Robbins*, 78 NY2d 1105, 1106 [1991]). As a result of Jeffrey Farkas' failure to argue before Supreme Court that his alleged negligence consisted merely of nonfeasance, the issue of whether he engaged in affirmative acts of negligence or negligently failed to act was not submitted to the jury and, as discussed below, the sufficiency of the evidence must be gauged in light of the charge as given to the jury.

The court's charge regarding the principles of negligence on which the jury was to base its verdict did not differentiate between affirmative acts of negligence and negligent failures to act. Because Jeffrey Farkas did not object to this portion of the charge or request contrary instructions, "the law as stated in that charge became the law applicable to the determination of the rights of the parties in this litigation . . . and thus established the legal standard by which the sufficiency of the evidence to support the verdict must be judged" (*Harris v Armstrong*, 64 NY2d 700, 702 [1984], citing *Up-Front Indus. v U.S. Indus.*, 63 NY2d 1004 [1984]; *Rajeev Sindhwani, M.D., PLLC v Coe Bus. Serv., Inc.*, 52 AD3d 674, 676-677 [2008]; *see Loughry v Lincoln First Bank*, 67 NY2d 369, 376-377 [1986]). The law stated in that portion of the charge was as follows:

"In this case the plaintiff[s'] claim is that the defendants did not act reasonably and that the infants suffered damages as a result. The defendant[s] claim that they did act reasonably and as such are not liable. The plaintiff[s] ha[ve] the burden of proving that the defendant[s] w[ere] negligent and the defendant[s'] negligence was a substantial factor in causing lead

poisoning damages to the children. The defendant[s] ha[ve] the burden of proving that the plaintiff[s] w[ere] negligent and that the plaintiff[s'] negligence was a substantial factor in causing the damage to the children.

"Negligence is the lack of ordinary care. It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances. Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the circumstances."

Evaluating the evidence according to the charge as given, we conclude that it is sufficient to support the jury's determination that Jeffrey Farkas was negligent. Notably, plaintiffs adduced evidence that a lead paint hazard existed in their apartment, that Jeffrey Farkas was responsible for inspecting the apartments in the building, that he was in plaintiffs' apartment on numerous occasions, that he had notice of the lead paint hazard in the apartment, and that he ultimately hired workers to abate the hazard.

We disagree with our dissenting colleague's conclusion that Jeffrey Farkas preserved for appellate review his argument that the complaint should be dismissed as against him because the evidence was legally insufficient to establish that he should be held personally liable. As noted above, because Jeffrey Farkas did not object to this portion of the charge or request contrary instructions, the law as stated in the charge became the law applicable to the determination of the rights of the parties.

To be sure, plaintiffs do not argue in their brief that the failure of Jeffrey Farkas to object to the court's charge requires that the sufficiency of the evidence be assessed in light of the charge as it actually was given. But the dissent cites no authority for the proposition that we nonetheless should or are required to assess the sufficiency of the evidence in accordance with a different legal standard. Moreover, as the appellant on this appeal, Jeffrey Farkas bears the burden of establishing that he is entitled to relief (*see Appleby v Erie County Sav. Bank*, 62 NY 12, 18 [1875]). Accordingly, plaintiffs' failure to argue preservation is of no moment. For the same reason, our dissenting colleague misses the point with his characterization of our position on preservation as "newly minted."

Nor does our dissenting colleague cite any authority supporting his contention that, "[b]y moving to dismiss the claim against him before the case was submitted to the jury, [Jeffrey] Farkas effectively objected to all of the court's subsequent

instructions *as applied to him."* In fact, that contention is undercut by the governing statute, CPLR 4110-b,[1] and case law (*see Hunt v Bankers & Shippers Ins. Co. of N.Y.,* 50 NY2d 938, 940 [1980] ["other than restating requests to charge that had previously been submitted to the court (which requests themselves were erroneous in significant detail), defendant took no sufficient exception to the charge as given and did not otherwise assist the Trial Judge in clarifying or distilling the legal issues as to which it now seeks our review. In consequence of its failure to address the charge with particularity, appellant has failed to preserve legal issues"]; *Carrasquillo v American Type Founders Co.,* 183 AD2d 410, 410 [1992], *lv denied* 81 NY2d 703 [1993]). At bottom, what is required is a sufficient objection to the charge that assists the trial judge in clarifying or distilling the legal issues in the charge (*see Hunt, supra*) and Jeffrey Farkas made no such objection.

The dissent's reliance on *Loughry v Lincoln First Bank* (*supra*) is misplaced and does not support its conclusion that we should evaluate the sufficiency of the evidence in accordance with the actual legal standard governing the liability of officers of a corporation instead of the legal standard stated in the charge. In *Loughry,* the Court determined that the issue of whether a particular employee was a "superior officer" for the purpose of ascertaining whether his employer could be held liable for punitive damages for that employee's conduct was preserved for appellate review. In this regard, the Court wrote "[a]fter the jury's verdict, proof was taken on damages . . . and the jury was charged with respect to compensatory and punitive damages. The court instructed the jury that punitive damages could be assessed against each defendant based on the earlier findings on liability: 'You have already determined by your answers to the questions submitted to you on Monday that the Defendants did act with malice, the individual Defendants. You may award under those circumstances punitive damages, and you may fix as punitive damages, the amount you fix need bear no relationship to the amount you award for compensatory damages.' But malice for one purpose is not malice for every

---

1. CPLR 4110-b states that "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court, out of the hearing of the jury, shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. *No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating the matter to which he objects and the grounds of his objection"* (emphasis added).

purpose. The court's *error*—equating an agent's malice sufficient under the doctrine of respondeat superior for compensatory damages against the employer, with the employer's own complicity necessary for punitive damages—*drew timely objection* from defense counsel, who protested that there was no basis for punitive damages against the bank. Counsel *objected, first*, because a finding that malice solely motivated Lee and Dovidio [i.e., the individual defendants] necessarily precluded a finding that they acted in the scope of employment and, *second*, because 'there's nothing showing sufficient proof of authorization, ratification or condonation of the acts of Lee and Dovidio.' While the *first objection* was properly rejected—'culpable recklessness' (which was charged to the jury) being one form of malice that can be fully consistent with scope of employment—the *second* should have alerted the trial court to the need for *further instruction* regarding a predicate for punitive damages against the bank, but the court declined to give any" (67 NY2d at 379 [emphasis added]). Thus, defense counsel made a specific objection to the portion of the charge with which he took issue after the charge was given. Here, of course, no objection (or request to charge) was lodged by Jeffrey Farkas *at any point* to the relevant portion of the charge. What was present in *Loughry*—a sufficient objection to the charge that should have assisted the trial judge in clarifying or distilling the legal issues in the charge (*Hunt, supra*)—is not present here. Far from demonstrating a "striking parallel to this case," *Loughry* is distinguishable in this key respect.[2]

Similarly misplaced is our dissenting colleague's reliance on *Greelish v New York Cent. R. R. Co.* (29 AD2d 159 [3d Dept 1968], *affd* 23 NY2d 903 [1969]) and *Gallagher v Citizens Water Works of Town of Highlands* (278 App Div 792 [2d Dept 1951], *affd* 303 NY 805 [1952]). In both of these cases the defendant moved to dismiss an action at the close of the plaintiff's case or the close of the evidence, and in both the Appellate Division held that because the motion should have been granted, the defendant was entitled to dismissal of the complaint regardless of the content of the charge to which no objection was made.[3] Critically, however, nothing in either decision suggests that the motions to dismiss did not raise the same specific objection that the defendant pressed on appeal. Accordingly, neither decision is at odds with the wealth of precedent holding that, when no

---

**2.** Accordingly, our dissenting colleague is wrong in claiming that our quotation from *Loughry* "abruptly" ends before the relevant passages.

**3.** Neither *Greelish* nor *Gallagher* cited any authority supporting that conclusion and neither appears to have been cited for that proposition.

timely and specific objection is taken to a charge, "the law as stated in th[e] charge became the law applicable to the determination of the rights of the parties in th[e] litigation *and thus established the legal standard by which the sufficiency of the evidence to support the verdict must be judged"* (*Harris*, 64 NY2d at 702 [emphasis added]; *see Cohen v St. Regis Paper Co.*, 64 NY2d 656 [1984], *revg* 99 AD2d 659, 660 [1984]; *Ramos v New York City Hous. Auth.*, 249 AD2d 59 [1998]; *Kroupova v Hill*, 242 AD2d 218 [1997], *lv dismissed in part and denied in part* 92 NY2d 1013 [1998]; *Rodriguez v Davis Equip. Corp.*, 235 AD2d 222 [1997]).

Jeffrey Farkas also argues that Supreme Court should have directed the jury to determine whether, on the occasions he engaged in the negligent conduct alleged by plaintiffs, he was acting outside the scope of his authority as a corporate officer. According to Jeffrey Farkas, had the jury been so directed and had it determined that he was not acting outside the scope of his authority as an officer of the Corporation, no personal liability could be imposed on him. This argument is not preserved for our review since Jeffrey Farkas neither sought jury instructions on that issue nor objected to the court's charge on the ground that it did not contain such instructions (*see* CPLR 4110-b; *Harris, supra*; *CBB Entertainment v Korn*, 240 AD2d 184 [1997]; *Carrasquillo, supra*). In any event, as discussed above, this argument is based on an inaccurate statement of the law.

Notwithstanding Jeffrey Farkas' failure to preserve his argument that the charge was erroneous because it failed to articulate the correct legal standard regarding his personal liability, we reach the issue in the interests of justice. "[W]here [an] error is so fundamental as to preclude consideration of the central issue upon which the claim of liability is founded, the court may, in the interests of justice, proceed to review the issue even in the absence of objection or request [to charge]" (*Pivar v Graduate School of Figurative Art of N.Y. Academy of Art*, 290 AD2d 212, 213 [2002]). Here, the central issue on which plaintiffs' claim of liability against Jeffrey Farkas was founded is whether any basis exists for holding him personally liable for actions he took as an officer of the corporation, and the court's charge precluded the jury from considering that issue.

Although we can review Jeffrey Farkas' claim in the interests of justice, we of course are not required to do so. For two reasons, however, we conclude that we should review it in the interests of justice. First, although it is possible that Jeffrey Farkas was prompted by strategic considerations not to press at

trial the specific contention that he could not be held liable because his alleged negligence consisted solely of nonfeasance, we think it more likely that this failure represented nothing more than an omission that was inadvertent or ignorant. Second, we think it unlikely that plaintiffs could have responded to a specific objection by offering additional evidence against Jeffrey Farkas that would have established a proper basis for holding him personally liable. Thus, Jeffrey Farkas should have a new trial on the issue of liability (*see id.*; *see also Clark v Interlaken Owners*, 2 AD3d 338 [2003]; *Breitung v Canzano*, 238 AD2d 901 [1997]; *Kelly v Tarnowski*, 213 AD2d 1054 [1995]; *Aragon v A & L Refrig. Corp.*, 209 AD2d 268 [1994]; *Kearse v Food Fair Stores*, 104 AD2d 582 [1984]; *Rivera v Bronx-Lebanon Hosp. Ctr.*, 70 AD2d 794 [1979]). The case law regarding the remedy for a fundamental error in the charge is clear and consistent—the matter should be remanded for a new trial.[4] In light of that case law, we cannot agree with our dissenting colleague's contention that, because the charging error was fundamental, we can dismiss the complaint as against him. We reach Jeffrey Farkas' argument in the interests of justice, but that does not warrant a finding that plaintiffs could not offer any additional relevant evidence. They may well be unable to do so, but we cannot lawfully so assume.

Supreme Court providently exercised its discretion in precluding defendants from calling their liability expert since they served their expert disclosure only a few days before the start of the trial, failed to provide the substance of the expert's anticipated testimony with the requisite "reasonable detail" mandated by CPLR 3101 (d) (1) (i), and failed to demonstrate good cause for their failure to comply with that statute (*see Lissak v Cerabona*, 10 AD3d 308, 309 [2004]; *Hudson v Manhattan & Bronx Surface Tr. Operating Auth.*, 188 AD2d 355 [1992]).

Both plaintiffs sustained the following injuries as a result of their exposure to lead paint in the apartment: permanent cognitive, attentional and behavioral deficits, learning disabilities, attention deficit disorder, hyperactivity, and diminished IQ. Ishmel was awarded future pain and suffering damages for a period of 65 years and Emmanuel was awarded such damages for a period of 67. The awards for past pain and suffering, as reduced by Supreme Court, are reasonable compensation for plaintiffs' past physical and emotional injuries. However, the awards for

---

4. Indeed, our dissenting colleague cites to no case where, in reversing a judgment in the interests of justice based on a fundamental error in the charge, the Appellate Division afforded the appellant any remedy other than a new trial.

future pain and suffering as to both plaintiffs, even as reduced by Supreme Court, deviate materially from reasonable compensation to the extent indicated above (see CPLR 5501 [c]; see generally Woolfalk v New York City Hous. Auth., 10 AD3d 524 [2004], lv denied 4 NY3d 711 [2005]; Jiminez v City of New York, 7 AD3d 268 [2004]; Mayi v 1551 St. Nicholas, 6 AD3d 219 [2004]; Seay v Greenidge, 292 AD2d 173 [2002]; Sampson v New York City Hous. Auth., 256 AD2d 19 [1998], lv denied 93 NY2d 808 [1999]). Concur—Gonzalez, McGuire and Moskowitz, JJ.

Friedman, J.P., dissents in part in a memorandum as follows: I respectfully dissent insofar as the majority remands the matter for a new trial as to the liability of defendant Jeffrey Farkas, a shareholder and officer of defendant 601 Realty Corp.[1] On this record, I would dismiss the complaint as against Farkas. I concur with the majority's decision in all other respects, including the affirmance of the judgment as to liability against 601 Realty.

Plaintiffs, having been injured by a lead paint condition in their former apartment, brought this action against 601 Realty, the corporate landlord, and Farkas, who, as indicated above, is a shareholder and officer of 601 Realty. Plaintiffs' claims are based entirely on tortious nonfeasance, specifically, the failure to abate the lead paint condition, a duty that, on this record, was owed by 601 Realty only, not by Farkas as an individual. Twice during trial, at the close of plaintiffs' case and again at the close of all of the evidence, Farkas unsuccessfully moved to dismiss the complaint as against himself on the ground that the evidence afforded no basis for imposing liability on him as an individual. The dismissal motions were denied, and the jury returned a verdict against both 601 Realty and Farkas individually.

The majority agrees with me on the "actual legal standard governing the liability of officers of a corporation," and does not suggest that the record discloses any basis for holding Farkas personally liable, under that "actual legal standard," for 601 Realty's failure to perform a corporate duty. Nonetheless, the majority deems itself powerless to dismiss the claim against Farkas because, in the majority's view, Farkas failed to preserve his objection to the submission of the claim against him, notwithstanding the two dismissal motions he made during trial, each one on the specific ground that any cause of action that had been proven lay against the corporation only. The majority further argues that the point is unpreserved because, af-

---

1. The jury exonerated the other individual defendant, Sidney Farkas. In the remainder of this writing, the name "Farkas" refers to Jeffrey Farkas only.

ter the denial of the dismissal motions, Farkas did not object to the jury charge. Having thus constructed its own rationale for affirming the judgment against Farkas, the majority splits the difference between plaintiffs and Farkas by vacating the judgment as against the latter, and remanding for a new trial on the issue of his liability, on the ground that the trial court committed fundamental error in instructing the jury that Farkas could be held liable for corporate nonfeasance.

For several reasons, I decline to join the majority in keeping alive a claim the trial record establishes to be legally insufficient. To begin, I am astonished by the majority's view that the two dismissal motions Farkas made during trial failed to preserve for appellate review his argument—a correct one on the merits, as the majority concedes—that plaintiffs failed to make out a prima facie case against him individually. Plaintiffs themselves have never asserted that Farkas failed to preserve his objection to being held personally liable; it is the majority, rather, that has fashioned this contention from a strained and artificial reading of the record, and has done so at its own initiative. Moreover, the majority's position that the trial court committed fundamental error in instructing the jury that Farkas could be held liable for the corporation's failure to act is wholly at odds with the majority's position that the motions to dismiss, although expressly predicated on the legal distinction between Farkas and the corporation, were somehow too "general" to alert the IAS court to the principle that Farkas could not be held liable for corporate nonfeasance. The point here is that the trial court's error, both in denying the motions to dismiss and in framing the jury charge, consisted in its overlooking precisely the same legal principle. If this principle is fundamental (and I agree that it is), does it not follow that the motions to dismiss, which were expressly based on the corporate/individual distinction, should have sufficed to bring that fundamental principle to the trial court's attention? The majority's additional contention that any point Farkas may have preserved by moving to dismiss was retroactively waived by his subsequent failure to object to the jury charge is not only without support in either case law or logic, it is contrary to two Appellate Division decisions, each affirmed by the Court of Appeals. Finally, it is pointless to send this matter back for a new trial when plaintiffs make no claim that they have any evidence not in the existing record that would support imposing liability on Farkas individually.

As stated above, the majority and I are in agreement on the relevant point of substantive law. The majority acknowledges

that, under "the actual legal standard governing the liability of officers of a corporation," a corporate officer, while liable for personal participation in the corporation's affirmative commission of a tortious act by malfeasance or misfeasance (*see e.g. Espinosa v Rand*, 24 AD3d 102 [2005]), cannot be held personally liable for the corporation's tortious nonfeasance, i.e., failure to act (*see MLM LLC v Karamouzis*, 2 AD3d 161, 162 [2003], citing *Michaels v Lispenard Holding Corp.*, 11 AD2d 12, 14 [1960]). In this case, the tort at issue—failure to abate a preexisting lead paint condition in plaintiffs' apartment—is plainly one of nonfeasance, for which only the corporate landlord, 601 Realty, may be held liable, absent special circumstances not present here.[2]

At the close of plaintiff's case at trial, Farkas preserved the issue of whether he could be held liable for the failure to abate the lead paint condition by moving to dismiss the complaint as against himself individually. In moving, defense counsel stated that "there has been no evidence submitted by plaintiff[s] that [Farkas] does have personal responsibility" for the alleged wrongdoing. The motion was renewed, and implicitly denied, at the close of the defense case.

The oral motions by Farkas's counsel at trial plainly placed at issue the propriety of holding Farkas personally liable for the allegedly tortious conduct of his corporation.[3] In response to each motion, it was the obligation of plaintiffs' counsel to identify any possible basis in the record for imposing personal liability on Farkas. Plaintiffs' counsel did not identify, and does not succeed in identifying now, a single instance of Farkas's active commission of an affirmatively tortious act.

In essence, the majority holds that Farkas failed to preserve the dispositive legal issue in the case against him because his counsel stated the rule protecting corporate shareholders and

---

**2.** In the trial court, plaintiffs argued that Farkas could be held personally liable for the failure to address the lead condition based on Administrative Code of the City of New York § 27-2114 (e), which expands liability to officers, directors and certain shareholders of a corporate landlord "[w]henever a multiple dwelling shall have been *declared a public nuisance . . . pursuant to subdivision b of this section*" (emphasis added). On appeal, plaintiffs have abandoned this argument, apparently recognizing that section 27-2114 (e) is inapplicable because the building in question was never declared a public nuisance through the procedures (including notice and hearing) prescribed by section 27-2114 (b). Instead, plaintiffs attempt on appeal to cast Farkas as having actively committed a tort against them. This attempt fails so completely that the majority does not even deem it worthy of discussion.

**3.** The same is true of the fourth affirmative defense pleaded in defendants' answer, which, on behalf of Farkas, "denie[d] ownership . . . of the premises in question."

officers from liability for corporate torts in what the majority considers a somewhat overbroad manner that perhaps fell short of the precision one would expect of a law school seminar. The purpose of a trial, however, is to achieve substantial justice between the parties, not to produce a law review article. Plaintiffs undeniably received notice from the dismissal motion at the conclusion of their case that Farkas was denying that they had proven any grounds for holding him personally liable for 601 Realty's alleged torts. Thus, that motion afforded plaintiffs an opportunity to come forward with any additional evidence in their possession of active wrongdoing by Farkas that would have supported holding him personally liable. Plaintiffs have never suggested that they possessed but failed to present any such evidence in their case at trial. Indeed, it defies reason to imagine that plaintiffs' experienced counsel would have withheld evidence of Farkas's active wrongdoing from trial if they had it.

In fact, one of the Court of Appeals decisions cited by the majority supports my view that an objection to the submission of a claim to the jury, even if imprecisely stated, suffices to preserve an issue for appellate review so long as the objection was stated in a way that reasonably should have alerted the court and the adverse party to the issue sought to be reviewed. In *Loughry v Lincoln First Bank* (67 NY2d 369 [1986]), a defamation case, one of the issues was whether the defendant bank had preserved for appellate review its contention that neither of the two individual defendants—bank employees who actually defamed the plaintiff—was a "superior officer" whose conduct could provide a predicate for an award of punitive damages against the bank. At the damages phase of a bifurcated trial, the bank timely "protested that there was no basis for punitive damages against [it]," arguing, inter alia, " 'there's nothing showing sufficient proof of authorization, ratification or condonation of the acts of [the individual defendants]' " (*id.* at 379). The bank did not, however, specifically argue that neither individual defendant was a "superior officer," and failed to request that the jury be given a "superior officer" charge. The Court of Appeals nonetheless held that the issue of whether the higher ranking individual defendant was a "superior officer" was preserved for appellate review. The Court held that the bank's objection that there was insufficient evidence of " 'authorization, ratification or condonation' " of the individual defendants' maliciously defamatory conduct "should have alerted the trial court to the need for further instruction regarding a predicate for punitive damages against the bank, but the court declined to give any. *Had plaintiff at that point perceived that a 'superior officer'*

*finding in particular furnished the necessary predicate for puni-*
*tive damages against the bank, he might have sought such an*
*instruction; his theory, however—like that of the trial court at*
*the time the charge was given—was that punitive damages could*
*be awarded against the bank on the showing of malice already*
*made as to the individuals. In these circumstances, the failure to*
*request a 'superior officer' charge cannot be laid at* [*the bank's*]
*door, or place the issue beyond our review"* (*id.* at 379-380
[emphasis added]).[4]

*Loughry* makes for a striking parallel to this case. In *Loughry*,
to reiterate, the Court of Appeals held that the "superior offi-
cer" issue had been preserved by the bank's argument that
there was " '[in]sufficient proof of [the bank's] authorization,
ratification or condonation' " (67 NY2d at 379) of the employ-
ees' malicious conduct, notwithstanding that the bank had not
argued specifically that only the malice of a "superior officer"
could be imputed to the bank for purposes of the punitive dam-
ages claim. The bank's argument sufficed to preserve the
"superior officer" issue because it "should have alerted" (*id.*)
the plaintiff and the trial court to that issue. Here, by a parity
of reasoning, the objection defense counsel articulated to the
submission of the claim against Farkas, on the specific ground
that no evidence had been presented on which liability for 601
Realty's failure to abate the lead condition could be imposed on
him as an individual, "should have alerted" plaintiffs and the
trial court to the need for evidence that Farkas had personally
engaged in affirmative tortious conduct by malfeasance or
misfeasance as a predicate for holding him individually liable.
While the argument could have been made in the manner
preferred by the majority, the key point—that any liability was
that of the corporation, not the corporate officer—was expressed.
Thus, this is not a case in which defense counsel merely voiced
"general objections" (*Robillard v Robbins*, 78 NY2d 1105, 1106
[1991]) to the submission of the claim against Farkas to the
jury. To paraphrase *Loughry*, "[i]n these circumstances, the fail-

---

4. The majority abruptly cuts off its extended quotation from *Loughry* im-
mediately before the language italicized above. The language omitted by the
majority makes it plain that the Court of Appeals regarded the bank's objec-
tion that there was no showing of its " 'authorization, ratification or condona-
tion' " of the employees' conduct as sufficient to "have alerted" (67 NY2d at
379) the trial court and plaintiff to the need for proof of the involvement of a
"superior officer," notwithstanding that counsel did not specifically refer to
the "superior officer" issue. Indeed, the Court of Appeals specifically concluded
that, under the circumstances presented, *"the failure to request a 'superior of-
ficer' charge* cannot be laid at [the bank's] door, or place the issue beyond our
review" (*id.* at 379-380 [emphasis added]).

ure to request a . . . charge [differentiating between affirmative acts of negligence and negligent failures to act] cannot be laid at [Farkas's] door, or place the issue beyond our review" (*id.* at 379-380).

In seeking to distinguish *Loughry* on the ground that "a sufficient objection" was raised in that case, the majority begs the question of what standard is used to determine whether an objection was "sufficient." *Loughry*, to reiterate, clarifies that the standard for a "sufficient" objection is one that, even if not articulated with the precision of a legal treatise, "should have alerted" (67 NY2d at 379) the court and opposing counsel to the issue sought to be reviewed. The majority also seeks to distinguish *Loughry* on the additional ground that (as the majority would have it) the bank was excepting to the punitive damages charge, rather than moving to dismiss a claim (as Farkas did here). Contrary to the majority's reading of the case, however, the bank's motion in *Loughry* was addressed, not to the contents of the charge, but to whether the claim for punitive damages against the bank should have been submitted to the jury at all (*see id.* ["defense counsel . . . protested that there was *no basis for punitive damages against the bank*" on the ground, inter alia, that " 'there's *nothing showing sufficient proof* of authorization, ratification or condonation of the (defamatory) acts' " (emphasis added)]). In any event, even if (as the majority claims) the bank in *Loughry* was excepting to the charge rather than seeking dismissal of the claim, the majority adduces no reason, and cites no authority, for holding a motion to dismiss to a standard of sufficiency higher than the standard applied to an exception to a charge.

Relatedly, the majority, making another point plaintiffs themselves have not made, argues that an additional ground for deeming the argument for dismissal of the claim against Farkas unpreserved, notwithstanding his motions to dismiss at trial, is his subsequent failure to object to the form of the court's negligence instruction. However, the law is that "the failure of the defendant to except to the charge of the [trial] court is neither binding nor controlling on [an appellate] court [where] the action should have been dismissed on the motion made at the end of the plaintiff's case and renewed at the close of all of the evidence" (*Greelish v New York Cent. R. R. Co.*, 29 AD2d 159, 161 [1968], *affd* 23 NY2d 903 [1969] [reversing a judgment upon a jury verdict in a negligence action and dismissing the complaint, where defendant, although it failed to except to the jury charge, had moved for a trial order of dismissal, and the evidence established plaintiff's contributory negligence, which was

then an absolute bar to recovery, as a matter of law]; *see also Gallagher v Citizens Water Works of Town of Highlands*, 278 App Div 792, 792-793 [1951], *affd* 303 NY 805 [1952] ["The question as to the sufficiency of the proof of negligence, presented by defendant's motions to dismiss the complaint and for a directed verdict, made at the close of the case, survived the court's charge; and, under the circumstances, the portions of the charge to which no exceptions were taken by defendant may not be considered as establishing the law of the case"]; 4 NY Jur 2d, Appellate Review § 612, at 565 n 5; 8A Carmody-Wait 2d § 57:53, at 65 n 2; 10 Carmody-Wait 2d § 70:102, at 310 n 6; 1 Newman, New York Appellate Practice § 2.05 [6], at 2-72 to 2-73 n 107 [2008]).

In the present case, by the time the jury was instructed, Farkas, like the defendant in *Greelish*, had already twice moved to dismiss the claim against him on the ground of insufficient evidence, first requesting dismissal "at the end of the plaintiff's case and [then] renew[ing] [the motion] at the close of all of the evidence" (29 AD2d at 161). By moving to dismiss the claim against him before the case was submitted to the jury, Farkas effectively objected to all of the court's subsequent instructions *as applied to him*, inasmuch as he argued that the claim against him should not be submitted to the jury at all. Any failure by Farkas to object to the particular *instructions* the jury received on the claim against him did not retroactively nullify the objection he had already interposed to the *submission* of that claim to the jury, and the majority cites no authority supporting the proposition that it did. Contrary to the argument the majority makes on plaintiff's behalf, Farkas's motions to dismiss the claim against him were, in effect, objections in advance to the portion of the charge that submitted the claim against him to the jury, which is, for purposes of this appeal, "the relevant portion of the charge" (to use the majority's phrase).[5]

By the majority's own admission, none of the appellate decisions cited in support of its argument based on the failure to object to the jury charge is inconsistent with *Greelish* or *Gallagher*. Essentially, the majority concedes that *Greelish and Gallagher* establish that a party, having timely but unsuccess-

---

5. If, as the majority says, "what is required is a sufficient objection to the charge that assists the trial judge in clarifying or distilling the legal issues in the charge," Farkas met this standard. For purposes of this appeal, the key legal issue in the charge was whether the court should submit to the jury any claim at all against Farkas as an individual. Farkas sufficiently "clarif[ied]" and "distill[ed]" that issue by moving, before the submission of the case to the jury, to dismiss the claim against himself on the ground that plaintiffs' causes of action, if any, lay against the corporation only.

fully moved to dismiss a claim before its submission to the jury, does not thereafter forfeit the right to appellate review of the denial of the dismissal motion by failing to object to the charge given on the claim, a proposition entirely consistent with CPLR 4110-b. While the majority seeks to distinguish *Greelish* and *Gallagher* from this case on the ground that "nothing in either decision suggests that the motions to dismiss [in *Greelish* and *Gallagher*] did not raise the same specific objection that the defendant pressed on appeal," this argument is not persuasive. As previously discussed, Farkas's motions to dismiss in this case did raise the same specific objection that he presses on appeal, namely, the lack of any evidentiary basis for holding him personally liable for a corporate tort.

The majority takes the position that Farkas's failure to object to the charge precludes our reviewing the sufficiency of the evidence against him under any standard other than that set forth in the trial court's erroneous charge to the jury. Nonetheless, the majority, recognizing that the error in the charge was fundamental, vacates the judgment against Farkas and remands for a new trial as to his liability, to be determined under the correct legal standard. I agree, of course, that the trial court committed fundamental error in charging the jury as it did, but the majority's action raises several questions. First, if the error in the charge was fundamental, was not the error in denying the motions to dismiss also fundamental? If so, would it not be equally appropriate to dismiss the complaint as against Farkas on the ground of fundamental error in the denial of his motions to dismiss, even if he technically failed to preserve his argument regarding the legal sufficiency of the evidence against him?[6] Further, as I previously suggested, if the principles governing when a corporate officer may be held personally liable for a corporate tort are fundamental to this case (as the majority and I agree they are), does it not follow that Farkas's motions to dismiss, by focusing on the distinction between the corporation and the individual, "should have alerted" (*Loughry*, 67 NY2d at 379) the trial court and plaintiffs' counsel to those fundamental principles, thereby preserving the issue for appellate review as a matter of law? And, to reiterate, plaintiffs, who have already had an opportunity to make their case against both 601 Realty and Farkas at the prior trial, give no indication that they have

---

**6.** The majority does not cite any case holding that the Appellate Division, in reversing a judgment based on fundamental error, has no power to dismiss a claim that lacks legally sufficient support in the trial record, even where the proponent of the claim has had an opportunity to present all available evidence supporting it and gives no indication that any additional evidence in support of the claim would be forthcoming at a new trial.

any additional evidence that could support a verdict imposing liability on Farkas as an individual. Indeed, even the majority "think[s] it unlikely that plaintiffs could have responded to a [more] specific objection by offering additional evidence against Jeffrey Farkas that would have established a proper basis for holding him personally liable." This being the case, what purpose is served by ordering a new trial?

To recapitulate, the record reflects that Farkas denied any personal liability in his answer and at trial, a position he again maintains on appeal. In response, plaintiffs contend that there is evidence supporting imposition of personal liability, a contention so lacking in merit that the majority does not even address it. The majority nevertheless declines to dismiss the claim against Farkas, contrary to the dictates of the substantive law (as to which the majority and I are in agreement), and not for any reason ever mentioned by plaintiffs, but instead based on the newly minted theory that the issue is not preserved. The lack of preservation is said to consist in Farkas's failure to state that the matters complained of were entirely instances of nonfeasance, and his failure to request a charge that he could be held liable only for personally participating in affirmative acts of misfeasance and malfeasance. It is patently unfair, however, to recast this appeal as turning on a preservation theory never even hinted at by plaintiffs, where (as the majority concedes) there is no evidence to support holding Farkas personally liable under established legal principles, and there is no suggestion by plaintiffs that they would have offered any additional evidence even if Farkas had phrased the objection in the precise manner the majority says was required. Accordingly, as the record shows that plaintiffs failed to make out a prima facie case against Farkas individually and that Farkas preserved this issue at trial, I would modify the judgment to dismiss the complaint as against him.

