■ In the Matter of BAUSCH & LOMB CONTACT LENS SOLUTION PRODUCT LIABILITY LITIGATION. PLAINTIFFS IN THE NEW YORK COORDINATED PROCEEDING, Appellants, v BAUSCH & LOMB, Respondent. [932 NYS2d 18]—

Plaintiffs failed to meet their burden of showing at the *Frye* hearing (*Frye v United States*, 293 F 1013 [1923]) that their experts' opinions that defendant's soft contact lens solution ReNu with MoistureLoc (ReNu ML) was causally related to a rise in non-Fusarium corneal infections were generally accepted by the relevant medical or scientific community (*see Pauling v Orentreich Med. Group*, 14 AD3d 357 [2005], *lv denied* 4 NY3d 710 [2005]; *Lara v New York City Health & Hosps. Corp.*, 305 AD2d 106 [2003]; *see also Marso v Novak*, 42 AD3d 377 [2007], *lv denied* 12 NY3d 704 [2009]). They submitted no "controlled studies, clinical data, medical literature, peer review or supportive proof" of their theory (*Saulpaugh v Krafte*, 5 AD3d 934, 936 [2004], *lv denied* 3 NY3d 610 [2004]; *Lara*, 305 AD2d at 106).

Plaintiffs' experts contended that testing showed a reduced biocidal efficacy of ReNu ML under certain conditions. The experts then extrapolated from those results the conclusion that ReNu ML increased the risk of non-Fusarium infections. However, one of the experts stated in a published article that "contamination is not consistently correlated with a higher rate of microbial keratitis" (Levey and Cohen, *Methods of Disinfecting Contact Lenses to Avoid Corneal Disorders*, 41 Survey of Ophthalmology 245, 246 [1996]). In addition, from a certain study in which a film was found to protect Fusarium, plaintiffs' experts concluded that the film similarly would protect other microorganisms. However, plaintiffs' microbiologist conceded that different types of microorganisms have different needs and respond differently to different conditions.

Moreover, despite four studies conducted on keratitis infections during the relevant period, plaintiffs introduced no

epidemiological evidence of a rise in non-Fusarium infections. The court properly excluded plaintiffs' epidemiologist from explaining this lack of an epidemiological signal, because the testimony had not been previously disclosed by plaintiffs and would have surprised defendant. Additionally, plaintiffs failed to demonstrate good cause for their failure to disclose the testimony (see CPLR 3101 [d]; *LaFurge v Cohen*, 61 AD3d 426 [2009], *lv denied* 13 NY3d 701 [2009]; *Peguero v 601 Realty Corp.*, 58 AD3d 556, 564 [2009]).

The court properly quashed plaintiffs' subpoena of defendant's expert and former chief medical officer, because the expert had been deposed on three occasions, and plaintiffs failed to articulate any legitimate need for his live testimony (see *Pena v New York City Tr. Auth.*, 48 AD3d 309 [2008]).

We have considered plaintiffs' remaining arguments and find them unavailing. Concur—Mazzarelli, J.P., Friedman, Catterson, Manzanet-Daniels and Román, JJ.

---

Motion for court to take judicial notice of new scientific study denied. **[Prior Case History: 25 Misc 3d 1244(A), 2009 NY Slip Op 52571(U).]**